**CITGO REFINING AND MARKETING, INC. and Citgo Petroleum Corporation, Appellants,**

v.

**Amelia GARZA, et al., Appellees.**

**No. 13–02–330–CV.**

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Dec. 12, 2002.

See also 973 S.W.2d 667.

---

Before Justices HINOJOSA, CASTILLO, and CHAVEZ.[1]

## OPINION

Opinion by Justice CASTILLO.

This is an attempted appeal from an interlocutory order of the trial court following a non-jury trial on the merits in a class action. The challenged order approved notice to two previously certified subclasses of a damages award in the plaintiffs' favor, of class counsel's request for expenses and attorneys' fees, and of a proposed distribution of the anticipated judgment. Appellants, Citgo Refining and Marketing, Inc. and Citgo Petroleum Corporation (jointly, "Citgo"), contend in two issues that: (1) the order either certified a new class or fundamentally altered the nature of the class, making it subject to interlocutory appeal and conferring jurisdiction on this Court; and (2) the trial court abused its discretion in certifying or fundamentally altering the nature of the class. We dismiss for want of jurisdiction.

## PROCEDURAL BACKGROUND

Although this lawsuit has been through complicated consolidations, settlements, and severances, for purposes of this attempted appeal it is procedurally fairly simple. Litigation began in 1993 with the filing of claims by commercial and residential property owners for property damage from alleged long-term emissions of contaminants by several chemical manufacturers and owners of commercial facilities in Corpus Christi's "refinery row" area. Other suits ensued, which ultimately were consolidated into one proceeding. The following is a simplified chronology, in the

J. Stephen Barrick, James S.E. Cowan, Jason B. Kinzel, Akin, Gump, Strauss, Hauer & Feld, Houston, Jeffrey K. Sherwood, Akin, Gump, Strauss, Hauer & Feld, McLean, VA, Jaime L. Capelo, Chaves, Gonzales & Hoblit, Corpus Christi, for appellants.

H. Lee Godfrey, Susman, Godfrey & Mcgowan, Dennis Craig Reich, Shari A. Wright, Reich & Binstock, J. Hoke Peacock III, William R. Merrill, Houston, Steve T. Hastings, Hastings & Alfaro, Alberto R. Huerta, Huerta, Hastings, Allison, L.L.P., Corpus Christi, for appellees.

---

1. Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 75.002 (Vernon 1998).

most general terms, of events relevant to an understanding of this appeal.

On November 14, 1995, the trial court certified the case as a class action.[2] Broadly speaking, the certification order divided the class into subclasses that included, among other subclasses, three residential areas: (1) the "Oak Park Triangle"; (2) the "I–37 South" properties; and (3) the "I–37 North" properties. On September 28, 1997, the class entered into a settlement agreement with Citgo, which was filed with the trial court. The Citgo settlement agreement provided, among other terms, for Citgo to buy out homeowners in the Oak Park Triangle and pay $1,450,000 to the I–37 South subclass and $3,550,000 to the I–37 North subclass. In mid-January of 1998, the trial court appointed a guardian ad litem in response to class concerns about several proposed settlements. Following extended discussions between the settling parties and the court, Citgo began to buy out the Oak Park Triangle subclass, although under terms different from those recited in the Citgo settlement agreement. On November 22, 1999, Citgo filed a motion for decertification, which was denied by the trial court on November 24, 1999. On January 12–14, 2000, the trial court heard plaintiffs' motion for preliminary approval of proposed settlements with several of the defendants, including the settlement with Citgo. Citgo opposed approval of the settlement agreement, objecting that it was no longer enforceable. On January 23, 2000, the trial court severed the plaintiffs' claims against three groups of defendants and granted preliminary approval of those settlements. On January 25, 2000, over Citgo's objections, the trial court granted preliminary approv-

al of the Citgo settlement. By separate order that same date, the trial court severed "all claims and causes of action brought by the plaintiffs against" Citgo from the class claims against the only other remaining defendant, Coastal Corporation, and the class proceeded to trial on the claims against Coastal.

Meanwhile, Citgo completed its buy-out of the Oak Park Triangle subclass, obtaining releases from each of the homeowners. Still asserting a number of defenses to enforceability of the settlement agreement, Citgo did not fund the $5,000,000 that the settlement agreement obligated it to pay to the I–37 South and I–37 North subclasses. On March 29, 2000, plaintiffs filed an amended class-action petition containing an "alternative claim against Citgo for breach of contract" for its alleged breach of the settlement agreement, which they amended again on June 27, 2001. On July 6, 2001, Citgo filed a supplemental motion to decertify the class action and vacate the November 14, 1995 certification order. Both sides filed motions for summary judgment on the plaintiffs' breach-of-contract claim against Citgo. The parties agreed to submit the merits of the breach-of-contract claim and defenses to the trial court instead of pursuing the cross motions for summary judgment. They waived a jury trial, and on August 13 and 14, 2001, the trial court conducted a bench trial on the breach-of-contract claim. Plaintiffs did not adjudicate their class tort claims against Citgo.

By written order signed on October 17, 2001, the trial court found in relevant part that: (1) Citgo entered into a valid and enforceable settlement with the plaintiff

---

**2.** The class certification issue was the subject of an interlocutory appeal. This Court upheld the certification order, and, after initially granting review, the supreme court withdrew its order as improvidently granted and dis-

missed the appeal for want of jurisdiction. *Amerada Hess Corp. v. Garza,* 973 S.W.2d 667 (Tex.App.-Corpus Christi 1996), *writ dism'd w.o.j. sub nom., Coastal Corp. v. Garza,* 979 S.W.2d 318 (Tex.1998).

class that remained valid and enforceable at all times prior to Citgo's breach; (2) Citgo breached its settlement agreement with the plaintiff class; and (3) the plaintiff class was damaged in the amount of $5 million by Citgo's breach. The order set an evidentiary hearing on the issue of attorneys' fees, which the trial court conducted on February 22, 2002. On March 15, 2002, the trial court awarded the class $700,000 in attorneys' fees on the breach-of-contract claim.

With resolution by trial, settlement, or dismissal of all class claims against Citgo's co-defendants and on finalization of Citgo's buy-out of the Oak Park Triangle subclass, only the I–37 South and I–37 North subclasses were still in active litigation in the severed claims against Citgo at the time of trial on the breach-of-contract claim. On April 30, 2002, class counsel submitted for approval a proposed notice to the remaining class (expressly excluding members of the Oak Park Triangle subclass who had participated in the buy-out of their properties by Citgo) of an anticipated judgment on the breach-of-contract claim. The proposed notice also informed the class of each member's right to opt out of the class and notified the class of class counsel's request for reimbursement of expenses and, in addition to the $700,000 awarded on the breach-of-contract claim, for $1.5 million in attorneys' fees under a common fund theory for counsel's work with regard to the class tort claims.

On May 14, 2002, the trial court conducted a hearing on the motion to approve the notice. Citgo objected to the notice, claiming that it effectively certified a new class because it excluded the Oak Park Triangle subclass and because the breach-of-contract cause of action had not existed at the time the class was originally certified in 1995. Citgo also argued that the notice certified an impermissible one-way inter-

vention or "fail safe" class because recovery was assured under the anticipated judgment on the breach-of-contract claim. Objecting that class counsel was not entitled to attorneys' fees both for prosecuting the underlying tort claim and as awarded in the breach-of-contract claim, Citgo contended that counsel's fee request created a conflict of interest between counsel and the class. Also, Citgo asserted that omission of the Oak Park Triangle subclass and the proposed distribution of the $5 million only to the I–37 South and I–37 North subclasses created a conflict of interest between the three subclasses.

On May 16, 2002, the trial court signed an order approving the proposed notice, a copy of which was attached to the order (the "May 2002 Order"). It is from the May 2002 Order that Citgo seeks an interlocutory appeal. Appellees moved for dismissal of the appeal, arguing that we have no jurisdiction to consider Citgo's challenges to the May 2002 Order. After Citgo filed its notice of appeal, the trial court signed an amended order approving notice to the class that set a fairness hearing on September 20, 2002 "to address any issues raised by class members in relation to the judgment on the settlement." In response, Citgo moved for emergency relief in this Court and asked that we stay entry of any final judgment by the trial court pending the outcome of this interlocutory appeal. By per curiam order dated September 10, 2002, we denied Citgo's request. Class counsel filed a proposed allocation of the anticipated judgment on September 17, 2002, and the trial court conducted the fairness hearing on September 20, 2002.

## INTERLOCUTORY APPELLATE JURISDICTION

■ The Texas Supreme Court has adhered steadfastly through the years to the

rule that an appeal may be prosecuted only from a final judgment and that to be final a judgment must dispose of all issues and parties in a case. *N.E. Indep. Sch. Dist. v. Aldridge,* 400 S.W.2d 893, 895 (Tex.1966). Accordingly, except as expressly authorized by statute, no appeal lies from an interlocutory order. *Cherokee Water Co. v. Ross,* 698 S.W.2d 363, 365 (Tex.1985) (orig.proceeding) (per curiam); *Aldridge,* 400 S.W.2d at 895.

■ Section 51.014 of the Texas Civil Practice and Remedies Code allows appeal from certain interlocutory orders, including one that "certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure." TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(3) (Vernon Supp.2003). Section 51.014 is strictly construed as a "narrow exception" to the general rule that only final judgments and orders are appealable. *Bally Total Fitness Corp. v. Jackson,* 53 S.W.3d 352, 355 (Tex.2001).

Texas Rule of Civil Procedure 42 governs class actions. TEX.R. CIV. P. 42. Rule 42(c)(1) provides that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall, after hearing, determine by order whether it is to be so maintained. This determination may be altered, amended or withdrawn at any time before final judgment." TEX.R. CIV. P. 42(c)(1); *Morgan v. Deere Credit, Inc.,* 889 S.W.2d 360, 365 (Tex. App.-Houston [14th Dist.] 1994, no writ); *Salvaggio v. Houston Indep. Sch. Dist.,* 709 S.W.2d 306, 309–10 (Tex.App.-Houston [14th Dist.] 1986, writ dism'd).

Simply stated, the jurisdictional problem in the present case is whether the trial court's May 2002 Order approving notice to the class amounts to an order that "certifies or refuses to certify a class." The May 2002 Order does not expressly certify or refuse to certify a class. Citgo

concedes that no Texas court has held that an order approving the form of notice to a class is subject to interlocutory appeal. Citgo argues that: (1) the effect of the order approving the notice is to certify a new class, subjecting the order to interlocutory appeal under an express exception to the finality rule contained in section 51.014(a)(3); and (2) interlocutory appeal lies from any order that alters the fundamental nature of a class. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(3) (Vernon Supp.2003); *see De Los Santos v. Occidental Chem. Corp.,* 933 S.W.2d 493, 495 (Tex. 1996) (per curiam) (permitting interlocutory appeal of an order changing the class from opt-out to mandatory). Appellees contend that the class action has remained as originally certified throughout the case, indeed since 1995, that the May 2002 Order is clearly denominated as an order approving the form of notice to the class of the anticipated judgment, and that the order does not certify any class, refuse to certify any class, or alter the existing class in any way.

■ Citgo counters that the particular wording of the trial court's order is irrelevant to the nature of the order and its appealability. We note that substance controls in determining the finality of a judgment, not the judgment's label or form. *Mathes v. Kelton,* 569 S.W.2d 876, 878 (Tex.1978); *Int'l Sec. Life Ins. Co. v. Spray,* 468 S.W.2d 347, 350 (Tex.1971); *Ferguson v. Naylor,* 860 S.W.2d 123, 129 (Tex.App.-Amarillo 1993, writ denied) (op. on reh'g). Accordingly, the Texas Supreme Court has rejected matters of form as controlling the nature of an order or judgment in favor of an examination of the character and function of the order in determining its classification. *See Del Valle Indep. Sch. Dist. v. Lopez,* 845 S.W.2d 808, 809 (Tex.1992) (analyzing whether an order granted injunctive relief and therefore

was appealable). Even express language asserting that an order is temporary is not controlling if the effect of the order establishes finality. *Brines v. McIlhaney,* 596 S.W.2d 519, 524 (Tex.1980) (orig.proceeding) (finding that when the substance of a decree amounts to a final judgment, incidental language labeling portions of the decree as temporary is not controlling). Thus, it is the substance and practical effect of the May 2002 Order that determines whether it is immediately appealable.

At the appealability end of the spectrum of interlocutory orders, in addition to the two statutorily recognized class-action orders (orders granting and orders denying class certification), only two other types of orders in class actions have been held to have the effect of certifying or refusing to certify a class and thus are subject to interlocutory appeal in Texas. The first application of section 51.014(a)(3) to an order that did not expressly certify or refuse to certify a class recognized that a withdrawal of certification has the same practical effect as a refusal to certify and, thus, is an appealable interlocutory order. *Grant v. Austin Bridge Constr. Co.,* 725 S.W.2d 366, 368 (Tex.App.-Houston [14th Dist.] 1987, no writ); *see also Wood v. Victoria Bank & Trust Co.,* 69 S.W.3d 235, 238 (Tex.App.-Corpus Christi 2001, no pet.) (interpreting *De Los Santos* in holding that an order that decertifies a class is an order that certifies or refuses to certify a class for purposes of section 51.014(a)(3) since it alters the fundamental nature of the class and changes the *status quo ante* ). *Grant* acknowledged the appealability of a decertification order, in part, because a more narrow interpretation of section 51.014(a)(3) would give trial courts the power to circumvent appellate review by first granting, then withdrawing, class certification. *Grant,* 725 S.W.2d at 368–69. The only other application of section

51.014(a)(3) to an order that did not expressly certify or refuse to certify a class came in the supreme court's recognition in *De Los Santos* that an order changing the characterization of a class from opt-out to mandatory fundamentally alters the nature of the class and therefore is immediately appealable. *De Los Santos,* 933 S.W.2d at 495.

■■■ On the opposite end of the appealability spectrum, rule 42(c) grants trial courts the discretion to alter or amend a certification decision at any time before final judgment. Tex.R. Civ. P. 42(c)(1). Thus, a trial court's exercise of its continuing power to alter or amend the nature of an existing certified class by an order increasing its size does not "certify or refuse to certify a class" for purposes of an interlocutory appeal. *Pierce Mortuary Colleges, Inc. v. Bjerke,* 841 S.W.2d 878, 880 (Tex.App.-Dallas 1992, writ denied). Similarly, an order modifying the class definition is not subject to interlocutory appeal under section 51.014(a)(3) as an order certifying or refusing to certify a class. *Koch Gathering Sys., Inc. v. Harms,* 946 S.W.2d 453, 456 (Tex.App.-Corpus Christi 1997, writ denied). In other words, an order that merely alters attributes of a class and does not affect the underlying certification of the action as a class action is not an order subject to interlocutory appeal under article 51.014(a)(3).

■■■ Finally, we note that the supreme court voiced in *De Los Santos* "concern" about conflicts of interest that can arise between the class and its counsel, particularly with regard to class settlements. *Bally,* 53 S.W.3d at 354–55; *De Los Santos,* 933 S.W.2d at 495. The supreme court did observe in reviewing an order that changed a previously certified class from opt-out to mandatory that "[t]o deny interlocutory appeal in this situation, when

class counsel agrees to a fundamental restructuring of the class to which they were once opposed, aggravates those concerns." *De Los Santos,* 933 S.W.2d at 495. However, the *De Los Santos* court did not hold, as Citgo suggests, that a conflict of interest alone, even if one is created, transforms an order that is not otherwise subject to interlocutory appeal into one that is. We do not have jurisdiction over an interlocutory order disposing of matters incidental to class certification unless the order also certifies or refuses to certify the class. *See American Express Travel Related Servs. Co. v. Walton,* 883 S.W.2d 703, 707 (Tex.App.-Dallas 1994, no writ) (holding that section 51.014(a)(3) conferred jurisdiction over complaints about notice and class size only because the trial court disposed of those issues in its order certifying the class).

## THE SUBSTANCE AND PRACTICAL EFFECT OF THE CHALLENGED ORDER

Citgo concedes that the May 2002 Order does not fall within any of the recognized exceptions to finality, in that the order does not expressly grant or deny certification, decertify this class action, or alter it from an opt-out to a mandatory class. Citgo argues that the effect of the order approving notice to the class of the anticipated judgment was to certify a new, much smaller class comprised of the I–37 South and I–37 North subclasses on a new cause of action, the breach-of-contract claim. Citgo also urges that the May 2002 Order is subject to the "fundamental alteration" exception announced in *De Los Santos.* Specifically, Citgo claims that: (1) exclusion of the Oak Park Triangle subclass fundamentally altered the nature of the previously certified class by substantially reducing its size; (2) the original class was not certified as to any breach-of-contract cause of action, and thus the effect of the

order was to fundamentally alter the purpose for which the class was certified; (3) the notice fundamentally altered the class by creating a new and impermissible one-way intervention or "fail safe" class because recovery was assured under the anticipated judgment on the breach-of-contract claim; (4) class counsel's request for additional attorneys' fees for prosecuting the underlying tort claims in addition to the attorneys' fees awarded in the breach-of-contract claim created a conflict between class counsel and the class and fundamentally altered the class; and (5) omission of the Oak Park Triangle subclass and the proposed allocation of the $5 million between the I–37 South and I–37 North subclasses created a conflict of interest between the three subclasses, also fundamentally altering the class and rendering the order subject to interlocutory appeal. We therefore analyze the substance and practical effect of the May 2002 Order in the context of Citgo's objections to determine whether the order is immediately appealable.

### *The Exclusion of the Oak Park Triangle Subclass*

Citgo does not dispute that the reason the Oak Park Triangle subclass is excluded from the class notice approved by the May 2002 Order is that Citgo bought out all the members of that class and obtained full releases from each. The class and subclasses originally certified in this litigation in 1995 have changed over time as a result of trial, settlement, severance, and Citgo's buy-out of the Oak Park Triangle subclass. Only the I–37 South and I–37 North subclasses remain. The trial court's order approving notice to the remaining class did not effect the change; the composition of the class evolved over time when overtaken by intervening events. Further, without addressing the

merits of Citgo's threshold contention that an order approving a notice to the class that excludes the Oak Park Triangle subclass is the equivalent of an order changing the composition of the class, we conclude that diminution in the size of a class as a result of attrition by settlement and release is more akin to an order changing the size of a class than it is to an order recharacterizing the class from opt-out to mandatory. *See Pierce Mortuary,* 841 S.W.2d at 880 ("[A]n amended order increasing the size of an existing certified class does not certify or refuse to certify a class pursuant to section 51.014(a)(3)."). We hold that reduction in the composition of a class through settlement and release after entry of the original certification order is not a fundamental alteration in the nature of the class.

### *The Addition of the Breach-of–Contract Claim*

 A written settlement agreement may be enforced even if one party withdraws its consent before judgment is rendered on the agreement. *Mantas v. Fifth Ct. of App.,* 925 S.W.2d 656, 658 (Tex.1996) (orig.proceeding) (per curiam). Where consent is lacking, however, a court may not render an agreed judgment on the settlement agreement but may enforce it only as a written contract. *Id.* The party seeking enforcement must pursue a separate breach-of-contract claim, which is subject to the normal rules of pleading and proof. *Id.* When the settlement dispute arises while the trial court has jurisdiction over the underlying action, a claim to enforce the settlement agreement should be asserted in that court under the original cause number through an amended pleading or counterclaim. *Id.*; *Padilla v. LaFrance,* 907 S.W.2d 454, 462 (Tex.1995). The settlement agreement alone is insufficient to provide a basis for judgment because it would deprive a party of the right

to be confronted by appropriate pleadings, assert defenses, conduct discovery, and submit contested fact issues to a judge or jury. *Cadle Co. v. Castle,* 913 S.W.2d 627, 632 (Tex.App.-Dallas 1995, writ denied).

In this case, a settlement dispute arose between the parties while the trial court had jurisdiction. The plaintiffs were required to amend their pleadings to assert the claim to enforce the settlement agreement. *Mantas,* 925 S.W.2d at 658; *Padilla,* 907 S.W.2d at 462. They did so. The trial court determined, after a trial on the merits, that Citgo had breached the settlement agreement. The court ordered the equivalent of specific performance of Citgo's contractual obligations to the I–37 South and I–37 North subclasses. We conclude that the breach-of-contract claim to enforce the settlement agreement did not affect the relationships of class members to each other or to class counsel. *See De Los Santos,* 933 S.W.2d at 495 (citing *Pierce Mortuary,* 841 S.W.2d at 880). Once again assuming, without deciding, Citgo's threshold contention that an order approving notice to the class of the anticipated judgment on the breach-of-contract claim is the equivalent of an order amending certification of the existing class for that cause of action, we conclude that action by a class to enforce a settlement agreement reached in the underlying case does not implicate certification of the class. We hold that pursuit of a breach-of-contract claim to enforce a settlement agreement by a class previously certified on the settled claims is not a fundamental alteration in the nature of the class.

We turn to Citgo's argument that an order approving notice to a "fail-safe" class effectively certifies a new settlement class and therefore is immediately appealable under section 51.014(a)(3).

### The Assurance of Recovery

Citgo's threshold premise is that the notice to the class approved by the May 2002 Order is the equivalent of a order certifying a "one-way" settlement class whose members have incentive to stay in the class because recovery is assured by the anticipated judgment. Citgo is mistaken in its characterization. The distribution proposed by the notice to the class resulted from adjudication on the merits, not from settlement. In any event, as Citgo acknowledges in its reply brief, the supreme court has held unequivocally that any incentive to stay in a class that might result from a trial court's order affects only the size of the class, not its fundamental nature, and thus is not an order certifying or refusing to certify the class as required for an interlocutory appeal. *Bally*, 53 S.W.3d at 356. Whether or not orders that might create the potential for one-way intervention are prohibited, as Citgo claims, the question presented is whether any such prohibition may be remedied by interlocutory appeal under our statute's limited jurisdictional grant. *Id.* Whether or not the trial court's May 2002 Order impermissibly created an incentive for potential class members not to opt out, which is far from clear, it changed nothing about the class itself. *Id.* We hold that the May 2002 Order approving notice to the class of an anticipated judgment does not certify or refuse to certify a class, have the practical effect of doing so, decertify a class, or fundamentally alter the nature of the class and, hence, is not immediately appealable.

We next address Citgo's arguments for application of the *De Los Santos* "fundamental alteration" exception to orders in class actions that implicate conflicts of interest between the class and class counsel or between class members. *De Los Santos*, 933 S.W.2d at 495.

### Class Counsel's Request for Attorneys' Fees in the underlying Tort Claims

Citgo contends that a request by class counsel for attorneys' fees under a common fund theory creates a conflict of interest between counsel and the class when the common fund resulted from a judgment on a suit to enforce a settlement agreement in which attorneys' fees already have been awarded. Citgo cites no authority in support of its characterization of counsel's fee request as creating a conflict of interest. Even if counsel's fee request evidences a conflict of interest, which also is far from clear, we have determined that the May 2002 Order does not certify or refuse to certify a class, have the practical effect of doing so, decertify a class, or fundamentally alter the nature of the class and, hence, is not immediately appealable. Unlike the circumstance in *De Los Santos*, where the supreme court, in holding that the challenged order fundamentally altered the class by changing the class from opt-out to mandatory, expressed concern about the possibility of a conflict of interest, in the present case the asserted conflict of interest is not reflected in an otherwise appealable order. *De Los Santos*, 933 S.W.2d at 495; *Am. Express*, 883 S.W.2d at 707. Assuming, without deciding, that counsel's fee application creates a conflict of interest between the class and its counsel, we hold that we do not have jurisdiction over the portion of the May 2002 Order approving notice to the class of counsel's fee application because the order does not otherwise certify or refuse to certify the class, have the practical effect of doing so, decertify the class, or fundamentally alter the nature of the class.

### The Allocation of the Anticipated Judgment

Citgo also argues that omission in the notice approved by the May 2002 Order of

the Oak Park Triangle subclass and the proposed distribution of the $5 million to the I–37 South and I 37 North subclasses created a conflict of interest between the three subclasses. We already have determined that exclusion of the Oak Park Triangle subclass from the notice resulted from Citgo's buy-out of those homeowners. In any event, under the terms of the original settlement agreement, the Oak Park Triangle subclass did not share in the $5 million Citgo agreed to pay the I–37 South and I–37 North subclasses. Moreover, no allocation between the I–37 South and I–37 North subclasses is recited in the notice approved by the May 2002 Order. Rather, the allocation about which Citgo complains is contained in class counsel's proposal filed on September 17, 2002, long after the May 2002 Order approved notice to the class of distribution of the anticipated judgment. We hold that we do not have jurisdiction over the portion of the May 2002 Order approving notice to the class of the proposed distribution because the order does not otherwise certify or refuse to certify the class, have the practical effect of doing so, decertify the class, or fundamentally alter the nature of the class.

## CONCLUSION

The certification of this class action occurred in 1995. In the intervening seven years, the class certification was appealed and affirmed, the case was removed to federal court and remanded back to state court, settlements were reached, claims severed, buy-outs effectuated, and a settlement breached. The case went to trial, and the trial court determined Citgo's liability, assessed damages, and awarded attorneys' fees, after which it approved notice to the remaining class of the resulting judgment. We do not believe that the statutory provision for an interlocutory appeal from class certification was ever intended to permit an eleventh-hour appeal of notice to the class of the pendency of an adjudicated final judgment. The Legislature has articulated carefully which interlocutory orders may be appealed, and the supreme court with equal care has applied the legislation only in narrow circumstances. *Bally,* 53 S.W.3d at 356. The May 2002 Order approving notice to the class, about which Citgo complains, is not one of them. "We are bound by that policy choice." *Id.* at 359. Citgo's appeal must await final judgment, which appears imminent. Accordingly, the present attempted appeal is dismissed for want of jurisdiction.