Tommy Wayne FLEMING, Appellant,

v.

Patricio AHUMADA, Jr. and Edwin L. McAninch, Appellees.

No. 13-03-00139-CV.

Court of Appeals of Texas, Corpus Christi-Edinburg.

May 18, 2006.

Rehearing Overruled July 6, 2006.

---

706

Craig H. Vittitoe, Roger W. Hughes, and Scott T. Clark, Adams & Graham, Attorney At Law, Harlingen, for Appellant.

Edwin L. McAninch, Attorney at Law, Kevin Risley, Houston, and Alison H. Moore, Thompson, Coe, Cousins & Irons, Dallas, for Appellees.

Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

## OPINION

Opinion by Justice HINOJOSA.

This appeal is from the trial court's judgment granting appellees, Patricio Ahumada, Jr. and Edwin L. McAninch, declaratory relief and an anti-suit injunction. In eight issues, appellant, Tommy Wayne Fleming, contends the trial court erred in granting the judgment. We reverse and

render in part and modify and affirm in part.

## A. BACKGROUND

In 1997, Ahumada, by and through his counsel McAninch, sued Fleming in the 404th District Court of Cameron County, alleging legal malpractice, fraud, breach of fiduciary duty, and violations of the Texas Deceptive Trade Practices—Consumer Protection Act ("the malpractice suit"), stemming from Fleming's alleged actions in an underlying bankruptcy suit. In July 2002, Ahumada and Fleming reached a settlement agreement in the malpractice suit, which they signed on July 10th and 11th, respectively. The settlement agreement contained a non-disclosure provision which stated:

> [T]he existence and terms of this agreement specifically including, but not limited to, the amount of consideration agreed to and the underlying facts and allegations of this suit, to the maximum extent permitted by law, shall remain confidential and shall not be disclosed to anyone.

The provision further stated that neither Ahumada nor any of his representatives would "release or otherwise communicate any of the terms or conditions of this settlement agreement or the amount paid," or "divulge the circumstances surrounding the alleged improper conduct made the subject of [Ahumada's] claims" against Fleming.

On July 25, 2002, Fleming filed suit against Ahumada and McAninch in the 288th District Court of Bexar County, seeking injunctive relief and damages. In the Bexar County suit, Fleming alleged that certain pleadings filed by McAninch on behalf of Ahumada in a lawsuit styled *Texas Gulf Trawling Co., Inc., et al. v. RCA Trawlers & Supply, Inc., et al.,* Cause No. 94–09–4693–D, then pending in the 103rd District Court of Cameron County, violated the non-disclosure provision of the settlement agreement. The Bexar County court issued a temporary restraining order against Ahumada and McAninch and set a hearing on the temporary injunction request for August 9, 2002.

In response, on August 2, 2002, Ahumada, with McAninch as an intervenor, obtained a temporary restraining order from the 404th District Court of Cameron County ("Cameron County"), enjoining Fleming from pursuing any matter related to the non-disclosure claims asserted in Bexar County, including attending the temporary injunction hearing. In addition, on August 8, 2002, Ahumada and McAninch filed in the Bexar County suit (1) a motion to transfer venue to Cameron County, (2) a plea to abate the Bexar County suit, and (3) an answer asserting that (a) the venue selection clause in the settlement agreement was unenforceable and (b) the confidentiality agreement improperly interfered with Ahumada's claims in the Texas Gulf Trawling case. On August 14, 2002, Ahumada and McAninch further petitioned the Cameron County court for declaratory relief that the confidentiality provision of the settlement agreement did not preclude Ahumada or McAninch from prosecuting the Texas Gulf Trawling case.

Similarly, on August 13, 2002, Fleming filed in Cameron County a plea to abate the Cameron County suit, urging that Bexar County had dominant jurisdiction over the non-disclosure claims, and a motion to transfer venue to Bexar County.

On August 16, 2002, the Cameron County court granted Ahumada and McAninch a temporary injunction, enjoining Fleming from seeking any relief arising from the settlement agreement in any county other than Cameron County, and from pursuing a claim for violation of the confidentiality provision of the settlement agreement

against Ahumada or McAninch for any conduct or disclosures made in connection with the defense or prosecution of the Texas Gulf Trawling case. In addition, the Cameron County court denied Fleming's plea to abate and set the case for trial.

Appellees' requests for declaratory relief and permanent injunction were tried to the Cameron County court, without a jury, on January 16, 2003. The trial court determined that it had jurisdiction over the action and granted declaratory and injunctive relief in favor of appellees. This appeal ensued.

## B. JURISDICTION

■ In his second and third issues, Fleming complains the trial court erred in concluding that it had jurisdiction to resolve the dispute over the settlement agreement. Fleming asserts that Bexar County had dominant jurisdiction over his breach of contract claims and, therefore, the trial court erred in denying his plea to abate.

■ The Texas Supreme Court has specifically instructed that "[w]here [a] settlement dispute arises while the trial court has jurisdiction over the underlying action, a claim to enforce the settlement agreement should, if possible, be asserted in that court under the original cause number." *Mantas v. Fifth Court of Appeals,* 925 S.W.2d 656, 658 (Tex.1996); *see also Batjet, Inc. v. Jackson,* 161 S.W.3d 242, 245 (Tex.App.-Texarkana 2005, no pet.) (noting that the parties properly asserted their motion for summary judgment to enforce the settlement agreement in the trial court under the original cause number); *Citgo Ref. & Mktg. v. Garza,* 94 S.W.3d 322, 330 (Tex.App.-Corpus Christi 2002, no pet.) (noting that because settlement dispute arose while trial court still had jurisdiction, parties properly asserted claims to enforce settlement agreement

under original cause number). Enforcement of a settlement agreement as a separate cause of action is only necessary where the trial court no longer has jurisdiction over the underlying action. *See Mantas,* 925 S.W.2d at 658–59.

Fleming filed his suit in Bexar County approximately two weeks after the parties signed the settlement agreement. On that date, however, the malpractice suit was still pending in the 404th District Court of Cameron County because the court had not yet signed an order of dismissal. Accordingly, the Cameron County court still had jurisdiction over the matter. Following *Mantas,* we conclude the parties were required to assert any claims regarding the settlement agreement in the 404th District Court of Cameron County under the original cause number.

■ Furthermore, we conclude that Fleming's arguments of "dominant jurisdiction" are inapplicable in this case. *See Curtis v. Gibbs,* 511 S.W.2d 263, 267 (Tex. 1974) (noting that once a court has acquired dominant jurisdiction under the "first-filed" rule, the second court is required to grant a properly requested plea in abatement). The concept of dominant jurisdiction applies only in circumstances where a suit would be proper in more than one county. *Gonzalez v. Reliant Energy, Inc.,* 159 S.W.3d 615, 622 (Tex.2005). Under those circumstances, "the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other courts" if venue was proper in that county. *Wyatt v. Shaw Plumbing Co.,* 760 S.W.2d 245, 248 (Tex.1988) (citing *Curtis,* 511 S.W.2d at 267; *V.D. Anderson Co. v. Young,* 128 Tex. 631, 101 S.W.2d 798, 800 (1937); *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, 1070 (1926)); *see also Gonzalez,* 159 S.W.3d at 622. However, we conclude later in this opinion that venue is not proper in Bexar County. *See* discussion

*infra* Part C. Because venue is proper only in Cameron County, the "first-filed" rule is inapplicable and the trial court did not err in denying appellant's plea to abate.

Fleming's second and third issues are overruled.

### C. VENUE

In his eighth issue, Fleming contends the trial court erred in denying his motion to transfer venue to Bexar County. Fleming asserts that (1) venue was mandatory in Bexar County, and (2) the venue provision contained in the settlement agreement should be enforced as written consent to transfer venue.

 In reviewing the venue determination of a trial court, we must conduct an independent review of the entire record. Tex. Civ. Prac. & Rem.Code Ann. § 15.064(b) (Vernon 2002); *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 758 (Tex.1993); *Colonial County Mut. Ins. Co. v. Valdez,* 30 S.W.3d 514, 527 (Tex.App.-Corpus Christi 2000, pet. denied). We conduct this review like any other review of a trial court's factual findings and legal rulings, except that we need not review the evidence for factual sufficiency. *Ruiz,* 868 S.W.2d at 758; *Valdez,* 30 S.W.3d at 527. If there is any probative evidence to support the trial court's determination, even if the preponderance of the evidence is to the contrary, we must uphold the trial court's venue determination. *Ruiz,* 868 S.W.2d at 758; *Valdez,* 30 S.W.3d at 527. Although we view the record in the light most favorable to the trial court's ruling, we do not defer to the trial court's application of the law to the facts of the case. *See Ruiz,* 868 S.W.2d at 758.

#### 1. *Mandatory Venue*

 Fleming asserts that venue was mandatory in Bexar County under section 15.012 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.012 (Vernon 2002) ("Actions to stay proceedings in a suit shall be brought in the county in which the suit is pending.").

By mandating that when an action has been previously filed, a party desiring to enjoin that action must proceed in the county in which the action is pending, section 15.012 prohibits parties from collaterally attacking proceedings properly pending in a foreign county. *See id.* Indeed, where we have determined that transfer of a proceeding was mandatory under section 15.012, we held the proceeding to be enjoined was filed in a court of proper venue for that action. *See O'Quinn v. Hall,* 77 S.W.3d 452, 454 (Tex.App.-Corpus Christi 2002, orig. proceeding). Our decision in *O'Quinn* explained that a party could not maintain venue of a suit to enjoin a proceeding in a foreign county by filing the request for injunction along with other claims for relief. *Id.* at 457. In the circumstance where a party files his collateral request for injunction along with other claims, section 15.012 mandates venue of all the claims in the county of the proceeding sought to be enjoined. *Id.* Fleming argues that because appellees requested injunctive relief against his action filed in Bexar County, all of appellees' claims had to be transferred to Bexar County.

However, the circumstances created by Fleming differ significantly from those where section 15.012 normally operates to control venue—Fleming, desiring to transfer his claims from Cameron County where venue was proper, to Bexar County where venue was not proper, filed a subsequent suit in the improper venue and attempted to force his opponents to either pursue both actions or transfer the entire action to the county of improper venue under section 15.012. Under the venue statutes, Cameron County is the only

proper venue for Fleming's claims. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 15.002, 15.011–15.039 (Vernon 2002). We will not endorse an interpretation of section 15.012 that creates a loophole for parties to circumvent the venue statutes in order to litigate their claims any place they choose. Furthermore, section 15.012 does not prevent a trial court from protecting its jurisdiction against such an attempted infringement. *See generally Golden Rule Ins. Co. v. Harper,* 925 S.W.2d 649, 651 (Tex.1996) (per curiam) (discussing anti-suit injunctions); *see also* discussion *infra* Part D. Accordingly, we conclude section 15.012 is inapplicable in this circumstance.

Because the supreme court's reasoning in *Mantas* required Fleming to bring his claims regarding the settlement agreement in the trial court under the original cause number, we conclude that Fleming's claims are properly considered permissive counterclaims to the original action. *Mantas,* 925 S.W.2d at 658; *see also* Tex.R. Civ. P. 97(b) ("A pleading may state as a counterclaim any claim against an opposing party whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."); BLACK'S LAW DICTIONARY 353 (7th ed.1999) (defining counterclaim as "a claim for relief asserted against an opposing party after an original claim has been made"). As permissive counterclaims, venue of the settlement dispute is properly controlled by venue of the underlying action under section 15.062 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.062 (Vernon 2002) ("Venue of the main action shall establish venue of a counterclaim, cross claim, or third party claim properly joined under the Texas Rules of Civil Procedure or any applicable statute."). Venue of the underlying action was determined pursuant to the general venue statute, under which

venue is proper (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred, (2) in the county of the defendant's residence at the time the cause of action accrued if the defendant is a natural person, (3) in the county of the defendant's principal office if the defendant is not a natural person, or (4) in the county in which the plaintiff resided when the cause of action accrued. Tex. Civ. Prac. & Rem.Code Ann. § 15.002(a) (Vernon 2002); *Madera Prod. Co. v. Atlantic Richfield Co.,* 107 S.W.3d 652, 657 (Tex.App.-Texarkana 2003, pet. denied). The original pleadings established that the cause of action arose in Cameron County, and all parties are residents of Cameron County. Therefore, we conclude that venue was proper in Cameron County for both the underlying action and the settlement dispute.

### 2. *Written Consent to Transfer Venue*

■ Fleming further argues that the trial court erred by not transferring the settlement dispute to Bexar County in accordance with the agreed venue provision contained in the settlement agreement. The agreed venue provision states as follows:

> This confidentiality clause is expressly performable and enforceable at the sole discretion of [Fleming] in a court of competent jurisdiction in either Brownsville, Cameron County, Texas or San Antonio, Bexar County, Texas. [Ahumada] specifically waives any right to transfer venue in the event litigation ensues and agrees to venue in Bexar County or Cameron County.

■ In general, "the fixing of venue by contract, except in such instances as [specifically permitted by statute], is invalid and cannot be the subject of private contract." *Fid. Union Life Ins. Co. v. Evans,*

477 S.W.2d 535, 537 (Tex.1972) (finding invalid venue clause which "in advance of trial, places the power in one of the contracting parties to select either the county authorized by the venue statutes or a county which violates that scheme"); *see also Int'l Travelers' Ass'n v. Branum,* 109 Tex. 543, 212 S.W. 630, 632 (1919). Therefore, as a contractual provision attempting to fix venue in Bexar County, the agreed venue provision is invalid.

However, Fleming argues that because the agreed venue provision is contained in a settlement agreement, it constitutes written consent from Ahumada to transfer venue in accordance with section 15.063(3) of the civil practice and remedies code and rule 255 of rules of civil procedure. *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.063(3) (Vernon 2002); Tex.R. Civ. P. 255. Section 15.063 provides that a trial court "on motion filed and served concurrently with or before the filing of the answer, shall transfer an action to another county of *proper* venue if . . . written consent of the parties to transfer to any other county is filed at any time." *Id.* § 15.063(3) (emphasis added); *see also* Tex.R. Civ. P. 255 ("Upon the written consent of the parties filed with the papers of the cause, the court, by an order entered on the minutes, may transfer the same for trial to the court of any other county having jurisdiction of the subject matter of such suit."). However, Bexar County is not a county of proper venue under any mandatory or permissive venue provision. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 15.011–15.039 (Vernon 2002). In addition, none of the parties reside in Bexar County and none of the events giving rise to the cause of action occurred in Bexar County. *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.002(a) (Vernon 2002). Thus, assuming, without deciding, that the agreed venue provision could possibly constitute written consent from Ahumada to transfer

venue, we conclude that Bexar County is not an eligible destination for such a transfer. Fleming's eighth issue is overruled.

## D. ANTI–SUIT INJUNCTION

In his fourth, fifth, and first issues, Fleming challenges the trial court's issuance of an anti-suit injunction.

■■■ The decision to issue an anti-suit injunction rests within the sound discretion of the trial court. *London Mkt. Insurers' v. American Home Assurance Co.,* 95 S.W.3d 702, 705 (Tex.App.-Corpus Christi 2003, no pet.). In reviewing the trial court's decision, we are to draw inferences from the evidence in the manner most favorable to the trial court's ruling. *See id.* "A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or misapplies the law to the established facts of the case." *Id.* (quoting *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985)). A trial court is within its power to base a decision on conflicting evidence; however, that evidence must reasonably support the trial court's decision. *Harbor Perfusion, Inc. v. Floyd,* 45 S.W.3d 713, 717 (Tex. App.-Corpus Christi 2001, no pet.).

### 1. *Grounds for Injunction*

■■■ In his fourth issue, Fleming asserts the trial court erred in concluding it had grounds to issue an anti-suit injunction.

■■■ It is firmly established that "Texas state courts have the power to restrain persons from proceeding with suits filed in other courts of this state." *Gannon v. Payne,* 706 S.W.2d 304, 305 (Tex.1986); *London Mkt.,* 95 S.W.3d at 705; *In re Est. of Dilasky,* 972 S.W.2d 763, 767 (Tex.App.-Corpus Christi 1998, no pet.). "The general rule is that when a

suit is filed in a court of competent jurisdiction, that court is entitled to proceed to judgment and may protect its jurisdiction by enjoining the parties to a suit subsequently filed in another court of this state." *Gannon*, 706 S.W.2d at 306–07 (citing *Cleveland*, 285 S.W. at 1072). The Texas Supreme Court has determined that there are four instances in which an anti-suit injunction is appropriate: (1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of important public policy; (3) to prevent a multiplicity of suits; or (4) to protect a party from vexatious or harassing litigation. *Golden Rule Ins. Co.*, 925 S.W.2d at 651; *London Mkt.*, 95 S.W.3d at 705–06. There are no precise guidelines to determine the appropriateness of an anti-suit injunction, and the circumstances of each situation must be carefully examined. *See Gannon*, 706 S.W.2d at 307; *London Mkt.*, 95 S.W.3d at 709.

First, Fleming's actions presented a threat to the jurisdiction of the trial court. *See* discussion *supra* Parts B, C. Cameron County properly had jurisdiction over the underlying malpractice cause of action and subsequent settlement dispute and was entitled to protect that jurisdiction from cases subsequently filed in other courts of this state. *See Gannon*, 706 S.W.2d at 306–07; *London Mkt.*, 95 S.W.3d at 705–06.

■ Second, Fleming's efforts to move the settlement dispute to Bexar County constituted an attempt to evade the important public policies embodied in the venue statutes of the State of Texas. *See* discussion *supra* Part C. The venue statutes are designed both "to give a person who has been sued the right to defend such suit in the county of his residence, except under well-defined exceptions," *Newlin v. Smith*, 136 Tex. 260, 150 S.W.2d 233, 234 (1941), and to reduce forum shopping by litigants.

*See Gonzalez*, 159 S.W.3d at 622 (citing Sen. Comm. on Economic Development, Bill Analysis, Tex. S.B. 32, 74th Leg., R.S. (1995)). Fleming's efforts attempted to circumvent both of these goals.

After thoroughly reviewing the record, we conclude that the trial court was correct in determining that there was both a threat to its jurisdiction and a need to prevent the evasion of an important public policy. Consequently, the trial court did not err in concluding that it had grounds to issue the anti-suit injunction. Fleming's fourth issue is overruled.

### 2. *Equitable Need for Injunction*

■ In his fifth issue, Fleming asserts that Ahumada and McAninch failed to prove that (1) they lacked an adequate remedy at law to justify an anti-suit injunction, and (2) they would suffer irreparable harm if the injunction did not issue.

■ The principle of comity requires that courts exercise this equitable power sparingly, and only in very special circumstances. *London Mkt.*, 95 S.W.3d at 706. The party seeking the injunction has the burden to show that a clear equity demands the injunction. *Id.* However, Fleming's argument under this issue is based solely on the premise that both Cameron and Bexar Counties were counties of proper venue, and therefore the jurisdictional dispute is governed by the "first-filed" rule. *See Lancaster v. Lancaster*, 155 Tex. 528, 291 S.W.2d 303, 305 (1956). To the contrary, we have determined that Bexar County is an improper venue and that the "first-filed" rule is inapplicable in this case. *See* discussion *supra* Parts B, C. Allowing the Bexar County suit to continue would have forced appellees to defend themselves in an improper venue. Furthermore, "it has long been the policy of the courts and the legislature of this state to avoid a multiplicity of lawsuits."

*See Gonzalez,* 159 S.W.3d at 623 (citing *Wyatt,* 760 S.W.2d at 246). Thus, we conclude that a clear equity justified the issuance of the anti-suit injunction. Fleming's fifth issue is overruled.

### 3. *Breadth of Injunction*

■ In his first issue, Fleming contends the trial court abused its discretion in granting an anti-suit injunction against him which prevented him from pursuing any claims that Ahumada and McAninch violated the confidentiality agreement. In its judgment of January 30, 2003, the trial court enjoined Fleming from "directly or indirectly ... pursuing a claim for violation of the confidentiality provision of the settlement agreement against [Ahumada] or [McAninch] for any conduct or disclosures made in connection with the defense or prosecution of the Texas Gulf Trawling case."

■ In general, a permanent injunction "must be narrowly drawn and precise." *Holubec v. Brandenberger,* 111 S.W.3d 32, 40 (Tex.2003) (quoting *Brown v. Petrolite Corp.,* 965 F.2d 38, 51 (5th Cir. 1992)). It must not "grant relief which is not prayed for nor be more comprehensive or restrictive than justified by the pleadings, the evidence, and the usages of equity." *Id.* at 39 (citing 6 L. Hamilton Lowe, Texas: Remedies § 244 at 237 (2d ed.1973)).

The record reflects the injunction granted by the trial court goes beyond protecting its jurisdiction and protecting the public policies of Texas and has the effect of preventing Fleming from ever being able to enforce his rights under the settlement agreement by bringing suit in a court of proper venue. Accordingly, we hold the injunction to be overly broad. *See id.* at 39–40 (citing *Villalobos v. Holguin,* 146 Tex. 474, 208 S.W.2d 871, 875 (1948) (stating that an injunction should not "be so broad as to enjoin a defendant from activities which are a lawful and proper exercise of his rights.")). Fleming's first issue is sustained.

### E. DECLARATORY RELIEF

In his sixth issue, Fleming contends the trial court erred in granting declaratory relief to Ahumada and McAninch because (1) the requested relief was already the subject of a prior pending suit, (2) a party may not obtain declaratory relief concerning what evidence may be admitted in another suit, (3) the requested declaratory relief altered rather than declared the existing rights and relations between the parties, and (4) the requested relief was speculative or hypothetical and thus, not justiciable.

### 1. *Prior Pending Action*

■ We first note that Fleming is generally correct in asserting that the Declaratory Judgments Act is "not available to settle disputes already pending before a court." *BHP Petroleum Co. v. Millard,* 800 S.W.2d 838, 841 (Tex.1990). This limitation prevents use of a declaratory judgment action to "deprive the real plaintiff of the traditional right to choose the time and place of suit." *Id.* (quoting *Abor v. Black,* 695 S.W.2d 564, 566 (Tex.1985)). However, for a prior proceeding to preclude action under the Declaratory Judgments Act, the proceeding or action must be between the same parties and must be able to adjudicate the issues involved in the declaratory action. *Tex. Liquor Control Bd. v. Canyon Creek Land Corp.,* 456 S.W.2d 891, 895 (Tex.1970); *Hous. Auth. of City of Harlingen v. Valdez,* 841 S.W.2d 860, 867 (Tex.App.-Corpus Christi 1992, writ denied). Not only did Bexar County not have proper venue, but Cameron County had previously established its authority to adjudicate disputes between the parties

arising from the underlying proceeding. *See State v. Morales,* 869 S.W.2d 941, 947 (Tex.1994) (noting that Declaratory Judgments Act is procedural device for deciding case already within court's jurisdiction). Consequently, the actions taken by Fleming in Bexar County did not preclude Ahumada's assertion of an action for declaratory judgment in Cameron County.

### 2. *Admissibility of Evidence in the Texas Gulf Trawling Case*

We next note that the parties' arguments regarding the ability of either the settlement agreement or a declaratory judgment to determine what evidence is admissible in the Texas Gulf Trawling case are inapposite to the issues at hand. Nothing in appellees' petition for declaratory relief nor in the declaratory judgment issued by the trial court speaks to the potential admissibility of evidence in the related lawsuit. The issue at hand is whether certain information, if voluntarily disclosed by Ahumada himself, will violate the non-disclosure clause, not whether the settlement agreement can be used to dictate what may or may not be admitted by the trial court in the related proceeding. *Cf. Scott v. McIlhany,* 798 S.W.2d 556, 559–60 (Tex.1990) (discussing inability of litigants to use private agreements to block discovery of information and testimony sought by third parties); *In re Cont'l Ins.,* 994 S.W.2d 423, 426 (Tex.App.-Waco 1999, orig. proceeding) mand. granted *In re Union Pac. Res. Co.,* 22 S.W.3d 338 (Tex.1999) (discussing limitations on contractual provisions to require litigant to "raise frivolous objections or grounds for refusing to produce discoverable information").

### 3. *Alteration of the Agreement*

 Fleming additionally complains that the declaratory judgment altered the rights and relations between the parties instead of merely construing the settlement agreement. However, aside from general assertions that the settlement agreement was "plain on its face" and unambiguous, that construction of the agreement was limited to the plain meaning of the words, and that Ahumada's declaratory judgment action was an attempt to change the agreement under "the ruse of construing it," Fleming offers no specific arguments or citations to the record to explain to this Court how the trial court's interpretation altered the rights of the parties. Therefore, we consider this complaint to be inadequately briefed. *See* Tex.R.App. P. 38.1(h).

### 4. *Speculative Relief*

 Fleming next argues that the declaratory relief granted by the trial court was speculative or hypothetical and, thus, not justiciable. Under the Declaratory Judgments Act, a "contract may be construed either before or after there has been a breach." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(b) (Vernon 1997). The Act thereby provides preventive relief, empowering a "court to adjudicate or declare the rights of the parties where there has arisen a real controversy before the wrong actually takes place." *RR Com'n v. Houston Natural Gas Corp.,* 186 S.W.2d 117, 123 (Tex.Civ.App.-Austin 1945, writ ref'd w.o.m.). Nonetheless, the Act does not constitute "an open-ended invitation to parties seeking interpretation of their contracts. There must be some showing that litigation is imminent between the parties unless the contractual uncertainties are judicially resolved." *Paulsen v. Tex. Equal Access,* 23 S.W.3d 42, 46 (Tex.App.-Austin 1999, pet. dism'd); *see also* Tex. Civ. Prac. & Rem.Code Ann. § 37.004(a) (Vernon 1997) ("A person interested under a ... contract ... may have determined any question of construc-

tion or validity arising under the instrument ... and obtain a declaration of rights, status, or other legal relations thereunder."). In addition, issues raised under the Act "may not be hypothetical or contingent, and the questions presented must resolve an actual controversy." *Port Isabel/South Padre Island Taxpayers Ass'n v. South Padre Island,* 721 S.W.2d 405, 407 (Tex.App.-Corpus Christi 1986, no writ) (citing *Empire Life Ins. Co. v. Moody,* 584 S.W.2d 855, 858 (Tex.1979)). A declaratory judgment may not be "premised upon the occurrence of a future, hypothetical event." *Valdez,* 841 S.W.2d at 866.

In their petition, Ahumada and McAninch asked the trial court for a declaratory judgment that the confidentiality provision contained in the Settlement Agreement does not preclude pursuit of the Texas Gulf Trawling case. The declaratory judgment subsequently granted by the trial court stated:

> [N]othing in the Settlement Agreement, specifically including the confidentiality provision of the Settlement Agreement, precludes Mr. Ahumada and his counsel from conducting discovery, asserting any relevant claims or defenses in pleadings, offering or presenting evidence, presenting argument of counsel, or prosecuting any claim or defense in the related [Texas Gulf Trawling] proceeding. . . .

However, the trial court further declared:

> [N]one of the actions taken by Mr. Ahumada or Mr. McAninch in the Texas Gulf Trawling Action, including the announcement of the settlement in this case, the designation of expert witnesses, the filing of a motion to disqualify, or the filing of pleadings, constitutes a violation of any provision of the Settlement Agreement, specifically including

the confidentiality provision of the Settlement Agreement.

We conclude the trial court's declaration that the settlement agreement does not prohibit the prosecution of the Texas Gulf Trawling case is a proper subject for resolution under the Declaratory Judgments Act. Such a declaration simply defines the status and legal relations among the parties under the settlement agreement.

 However, we conclude that the trial court's declaration that none of the actions taken by Ahumada or McAninch constitutes a violation of the settlement agreement is an improper subject matter for a declaratory judgment action. A declaratory judgment is proper when it will serve to settle the controversy between the parties. *Cal. Prod., Inc. v. Puretex Lemon Juice, Inc.,* 160 Tex. 586, 334 S.W.2d 780, 783 (1960); *Valdez,* 841 S.W.2d at 867. By determining whether the actions taken by Ahumada and McAninch to date violated the settlement agreement, the trial court settled nothing; the non-disclosure provision is still in place and the related Texas Gulf Trawling proceeding is still pending. Whether additional actions taken or information disclosed in the Texas Gulf Trawling case will violate the non-disclosure provision depends upon the occurrence of a future, hypothetical event and is improperly reached by the trial court. *See Valdez,* 841 S.W.2d at 867; *Stop 'N Go Markets of Tex. v. Executive Sec. Sys., Inc.,* 556 S.W.2d 836, 837 (Tex. App.-Houston [14th Dist.] 1977, no writ); *see also Cal. Products,* 334 S.W.2d at 783 (holding that "a declaratory judgment should not be based upon facts which are particularly subject to mutation and change."). Further, a declaration regarding whether actions taken to date have violated the settlement agreement is contrary to the principle that "the Declaratory Judgments Act was not intended to pro-

vide for the 'piecemeal' trial of lawsuits." *Stop 'N Go,* 556 S.W.2d at 837 (citing *United Serv. Life Ins. Co. v. Delaney,* 396 S.W.2d 855, 858 (Tex.1965)). Fleming's sixth issue is sustained in part.

### F. MOOTNESS

■ In his seventh issue, Fleming complains that once he non-suited McAninch from the Bexar County case on August 28, 2002, McAninch's claims for declaratory and injunctive relief were moot, and he no longer had standing to intervene in Ahumada's declaratory judgment action.

■ In order to establish standing, a plaintiff must show that he "is personally aggrieved, regardless of whether [he] is acting with legal authority." *Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex.1996) (citing *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984)). In Texas, the general test for standing is whether (a) there is a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought. *Nootsie,* 925 S.W.2d at 662 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993)) (quoting *Bd. of Water Eng'rs v. City of San Antonio,* 155 Tex. 111, 283 S.W.2d 722, 724 (1955)).

When Fleming filed suit in Bexar County, he asserted that McAninch violated the confidentiality provision of the settlement agreement by filing documents on behalf of Ahumada in the Texas Gulf Trawling case. By non-suiting McAninch from the Bexar County suit without prejudice, Fleming may have eliminated any current pending litigation against McAninch, but he did not eliminate the controversy between the parties. McAninch has no guarantee that Fleming will not once again initiate action against him for violation of the settlement agreement. *See Del Valle Ind. Sch. Dist. v. Lopez,* 863 S.W.2d 507, 511 (Tex.App.-Austin 1993, writ denied). Because a present, justiciable controversy still existed between McAninch and Fleming, McAninch had a valid cause of action under the Declaratory Judgments Act. Fleming's seventh issue is overruled.

### G. CONCLUSION

That portion of the trial court's judgment declaring that none of the actions taken by Ahumada or McAninch in the Texas Gulf Trawling Action constitutes a violation of the settlement agreement is reversed. Judgment is rendered that the portion of the trial court's judgment declaring that none of the actions taken by Ahumada or McAninch in the Texas Gulf Trawling Action constitutes a violation of the settlement agreement is set aside.

The trial court's anti-suit injunction is modified to reflect that Tommy Wayne Fleming, his agents, servants and employees, are enjoined from directly or indirectly pursuing a claim against Patricio Ahumada and Edwin L. McAninch in any county other than Cameron County for violation of the confidentiality provision of the settlement agreement for any conduct or disclosures made in connection with the defense or prosecution of the Texas Gulf Trawling case. As modified, the remaining portion of the trial court's judgment is affirmed.

Justice ERRLINDA CASTILLO, dissenting.

Dissenting Opinion by Justice CASTILLO.

The majority fixes jurisdiction and venue in Cameron County, concluding that Cameron County is the only proper venue for enforcement of the claims of appellant, Tommy Wayne Fleming. Respectfully, I conclude that the majority's decision ren-

ders illusory[1] the unambiguous written agreement[2] that authorized enforcement in Bexar County. Consequently, I respectfully dissent.

The agreed-to clause unequivocally authorizes Fleming to enforce, in particular, the confidentiality clause in a court of competent jurisdiction in either Cameron or Bexar County. The clause could not more plainly authorize Fleming to select the county in which to litigate. More importantly, the clause states, in pertinent part, that appellee Patricio Ahumada "specifically waives any right to transfer venue in the event litigation ensues." Litigation ensued. By the express terms in the clause, Ahumada agreed that a dispute would be litigated in Cameron County if Fleming, at his sole discretion, chose to litigate there. Fleming exercised his sole discretion not to litigate in Cameron but, rather, in Bexar County. The parties did not agree as to proper venue. They did agree that Ahumada waived any right to transfer venue. By allowing Ahumada to challenge and prevail on the very grounds he agreed to waive, the majority renders his promise and the agreement illusory.

I am mindful that the plaintiff has the first choice to fix venue in a proper county by filing the suit in the county of its choice.

In re Masonite Corp., 997 S.W.2d 194, 197 (Tex.1999) (orig.proceeding). A plaintiff's choice of venue stands unless challenged by proper motion to transfer venue. See Tex.R. Civ. P. 86(1); In re Missouri Pac. R.R. Co., 998 S.W.2d 212, 216–17 (Tex. 1999). If the plaintiff's venue choice is not properly challenged through a motion to transfer venue, the propriety of venue is fixed in the county chosen by the plaintiff. Wilson v. Texas Parks & Wildlife Dep't, 886 S.W.2d 259, 260 (Tex.1994); see Tex. Civ. Prac. & Rem.Code Ann. § 15.063 (Vernon 2002); Tex.R. Civ. P. 86(1). Because he unambiguously agreed to waive any right to transfer, Ahumada consented to litigate in Bexar County. His challenge to venue in that county was improper because he expressly waived that right.

In sum, by his eighth issue, Fleming asserts that the trial court erred in denying his motion to transfer venue. I would sustain the issue. The enforcement clause here unambiguously meant what it said: Fleming would decide the county and Ahumada waived the right, if any, to complain. Nothing within the clause itself made the clause ambiguous. Accordingly, I would enforce the parties' unambiguous agreement. Because the majority and I diverge as to the validity of the parties' agreement, including Ahumada's waiver, my dissent as

1. A promise is illusory when it fails to bind the promisor, who retains the option of discontinuing performance. See Light v. Centel Cellular Co. of Tex., 883 S.W.2d 642, 645 (Tex.1994); In re H.E. Butt Grocery Co., 17 S.W.3d 360, 370 (Tex.App.-Houston [14th Dist.] 2000, no pet.). When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation and, thus, there is no contract. In re C & H News Co., 133 S.W.3d 642, 647 (Tex.App.-Corpus Christi 2003) (original proceeding).

2. If there is no ambiguity, the construction of the written instrument is a question of law for the court. City of Alton v. City of Mission, 164 S.W.3d 861, 869 (Tex.App.-Corpus Christi 2005, pet. filed) (citing City of Pinehurst v.

Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex.1968)). It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the courts will give effect to the intention of the parties as expressed or as is apparent in the writing. Id. In the usual case, the instrument alone will be deemed to express the intentions of the parties for it is objective, not subjective, intent that controls. Id. The primary concern of a court interpreting a contract is to ascertain and to give effect to the intentions of the parties as expressed in the instrument. Id. (citing R & P Enter. v. LaGuarta, Gavrel & Kirk, 596 S.W.2d 517, 518 (Tex.1980)).

to the remaining issues is not necessary to the final disposition of the appeal. Thus, respectfully I do not address them. *See* Tex.R.App. P. 47.1.