Mark A. CANTU, Appellant,

v.

HOWARD S. GROSSMAN, P.A., Appellee.

No. 14–06–00078–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 29, 2008.

Rehearing Overruled May 15, 2008.

Juan Rocha Jr., Robert Schell, McAllen, for appellant.

Mark A. Cantu, McAllen, pro se.

Peter Michael Kelly, Houston, for appellee.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## MAJORITY OPINION

CHARLES SEYMORE, Justice.

In this case, we are asked to consider for the first time whether the filing of a foreign judgment is subject to our state's venue statutes. Appellee Howard S. Grossman, P.A. obtained a Florida judg-

ment against appellant Mark A. Cantu and filed the judgment in Harris County. Cantu moved to transfer venue to Hidalgo County, where he resides and maintains his business and property. After considering the purpose of the Uniform Enforcement of Foreign Judgments Act and the interpretation of similar statutes by other states, we conclude that the general venue statute applies. We therefore reverse and remand with instructions to transfer the cause to a court of competent jurisdiction in Hidalgo County, and we do not reach Cantu's remaining issue.

## I. PROCEDURAL BACKGROUND

Grossman sued Cantu in Florida for tortious interference with contract. After the Florida trial court struck Cantu's defensive pleadings as a discovery sanction, Grossman obtained a final summary judgment in the amount of $833,000 plus prejudgment interest of $516,665, for a total of $1,349,665. Cantu appealed. On an extensive record and after full briefing by both parties, a Florida court of appeals affirmed the final summary judgment. Grossman also obtained a final judgment for attorneys' fees and costs in the amount of $25,530.[1]

Pursuant to the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), Grossman filed the two Florida judgments in the 215th District Court for Harris County, Texas.[2] In response, Cantu filed a "Motion to Transfer Venue, and, Subject Thereto, Motion for New Trial, Alternatively, Motion for Denial of Recognition of Foreign Judgment." The trial court denied Cantu's Motion to Transfer Venue and his Motion for New Trial and Alternative Motion for Denial of Recognition of

Foreign State Judgment.[3] Cantu appealed. In two issues, he challenges the trial court's denial of both motions. Due to our disposition of the venue question, we do not reach Cantu's remaining issue.

## II. STANDARD OF REVIEW

In his first issue, Cantu argues the trial court erred in denying his motion to transfer venue to Hidalgo County. When reviewing the denial of a motion to transfer venue, we consider the entire record. Tex. Civ. Prac. & Rem.Code Ann. § 15.064(b) (Vernon 2002). Relying on Texas's general venue provision, Cantu contends venue is proper only in Hidalgo County, the county of his residence. *See* Tex. Civ. Prac. & Rem.Code Ann. § 15.002(a)(2) (Vernon 2002) (providing all lawsuits shall be brought, *inter alia*, in county of defendant's residence). Grossman responds that under the UEFJA, venue is proper in any county, including Harris County. *See* Tex. Civ. Prac. & Rem.Code Ann. § 35.003(a) (Vernon 1997) (providing copy of foreign judgment "may be filed in the office of the clerk of any court of competent jurisdiction of this state").

## III. ANALYSIS

### A. Venue Challenge

Venue concerns the geographic location within the forum where the case may be tried. *See, e.g., Boyle v. State,* 820 S.W.2d 122, 139–40 (Tex.Crim.App.1989) (en banc); *see also Gordon v. Jones,* 196 S.W.3d 376, 383 (Tex.App.-Houston [1st Dist.] 2006, no pet.) ("Venue may and generally does refer to a particular county, but may also refer to a particular court.");

---

1. The record does not indicate that Cantu appealed the judgment awarding attorneys' fees and costs.

2. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 35.002, 35.003 (Vernon 1997).

3. The trial court's written order denying the motion to transfer venue is not part of the record on appeal. Grossman, however, concedes the trial court entered such an order.

*Liu v. Cici Enters., LP,* No. 14–05–00827–CV, 2007 WL 43816, at *2 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (mem. op.) (same). "Generally, chapter 15 of the Texas Civil Practice and Remedies Code governs venue of actions." *In re Tex. Dept. of Transp.,* 218 S.W.3d 74, 76 (Tex.2007). The plaintiff has the first choice to fix venue in a proper county by bringing the action in the county of his choice. *In re Masonite Corp.,* 997 S.W.2d 194, 197 (Tex. 1999). If a defendant objects to the plaintiff's choice through a timely motion to transfer venue, the plaintiff must prove that venue is proper in the county of suit. *Id.; Wilson v. Tex. Parks & Wildlife Dept.,* 886 S.W.2d 259, 260–61 (Tex.1994). If the plaintiff fails to establish proper venue, the trial court must transfer venue to the county specified in the defendant's motion to transfer, provided that the defendant has requested transfer to another county of proper venue. *Masonite,* 997 S.W.2d at 197. On this point, the defendant has the burden to provide prima facie proof. *Id.*

■ In response to Cantu's challenge, Grossman asserted that venue was proper under the following terms of the UEFJA:

(a) A copy of a foreign judgment authenticated in accordance with an act of congress or a statute of this state may be filed in the office of the clerk of any court of competent jurisdiction of this state.[4]

(b) The clerk shall treat the foreign judgment in the same manner as a judgment of the court in which the foreign judgment is filed.

(c) A filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed.

Tex. Civ. Prac. & Rem.Code Ann. § 35.003 (Vernon 1997). Grossman offered no additional evidence supporting the venue choice of Harris County but instead asserts that, under section 35.003, a foreign-judgment creditor may maintain venue in *any* Texas court of competent jurisdiction. Cantu, on the other hand, argues that this court should follow the reasoning of the courts of our sister states, conclude that the UEFJA is silent regarding venue, and apply our general venue statutes.

Although our dissenting colleague contends that we should determine whether the general venue statute applies to the filing of a foreign judgment by focusing on the word "lawsuit" in the venue statute, we follow the approach of every other state that has addressed this question, and begin our analysis with the Uniform Act.

**B. Construction of the UEFJA**

■ The construction of a statute is a question of law, which we review de novo. *F.F.P. Operating Partners, L.P. v. Duenez,* 237 S.W.3d 680, 683 (Tex.2007). And because the UEFJA is a uniform act, we must begin our analysis with the Act's purpose. Tex. Gov't Code Ann. § 311.028 (Vernon 2005) ("A uniform act included in a code shall be construed to effect its general purpose to make uniform the law of those states that enact it"); *see also id.* § 312.005 ("In interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy."); *Panhandle & S.F. Ry. Co. v. Friend,* 91 S.W.2d 922, 925 (Tex.Civ.App.-

---

4. A court of competent jurisdiction is one having authority over the defendant, authority over the subject matter, and power to enter the particular judgment rendered. *State v.*

*Hall,* 794 S.W.2d 916, 919 (Tex.App.-Houston [1st Dist.] 1990), *aff'd,* 829 S.W.2d 184 (Tex. Crim.App.1992).

Austin 1936, no writ) (interpreting a statute with language similar to section 311.028, and stating, "This rule has peculiar application to procedural statutes . . . to secure to the litigant as simple, prompt, and expeditious determination of his case as is consistent with fair and impartial justice, reducing as far as practical to a minimum the delay and expense incident to reversal and new trial.").

 Our ultimate goal in construing a statute is to give effect to the Legislature's intent as expressed in the language of the statute. *F.F.P. Operating Partners, L.P.,* 237 S.W.3d at 683; *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 892 (Tex.2000). In doing so, we must always consider the statute as a whole rather than its isolated provisions. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001) (citing *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985)). "We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone." *Id.* (citing *Barr v. Bernhard,* 562 S.W.2d 844, 849 (Tex.1978)). Instead, we presume that both the statute and the legislative act are intended to be effective in their entirety. *Allegheny Mut. Cas. v. State,* 710 S.W.2d 139, 141 (Tex.App.-Houston [14th Dist.] 1986, pet. ref'd). Thus, in construing a statute—regardless of whether it is ambiguous on its face—we may consider, among other matters, the object sought to be attained; the circumstances under which the statute was enacted; common law or former statutory provisions, including laws on the same or similar subjects; and the consequences of a particular construction. *See* Tex. Gov't Code Ann. § 311.023 (Vernon 2005).

## C. Purpose of the UEFJA

 By examining the rulings of other states that have enacted various versions of the UEFJA, we can determine that the Act is

(a) intended "to give the holder of foreign judgment the same rights and remedies as holders of domestic judgments, and to make foreign judgments just as easy to enforce." *Redondo Constr. Corp. v. U.S.,* 157 F.3d 1060, 1065 (6th Cir.1998). Thus, the UEFJA is not intended to give holders of foreign judgments greater rights than holders of domestic judgments.

(b) "designed merely as a facilitating device and was not intended to alter any substantive rights of the parties in an action for enforcement of a foreign judgment." *Me. v. SeKap, S.A. Greek Co-op. Cigarette Mfg. Co., S.A.,* 392 N.J.Super. 227, 920 A.2d 667, 672 (N.J.Super.Ct.App.Div.2007). It is reasonable, then, to interpret the Act in a manner that does not alter the substantive rights afforded by Texas venue statutes to Texas defendants.

(c) enacted "to facilitate the interstate enforcement of judgments in any jurisdiction where the judgment debtor is found." *Hamwi v. Zollar,* 299 Ill.App.3d 1088, 234 Ill.Dec. 253, 702 N.E.2d 593, 597 (Ill.App.Ct.1998). Thus, the UEFJA may be interpreted in a manner consistent with the general venue statute, under which venue may be maintained in the county of the defendant's residence.

(d) created "to provide a simpler, more expedient procedure to enforce foreign judgments; it is not [intended] to endow foreign creditors with substantive rights not otherwise available in the forum state." *Abba Equip., Inc. v. Thomason,* 335 S.C. 477, 517 S.E.2d 235, 238 (S.C.Ct. App.1999). Consequently, it cannot

be interpreted as a "super venue" statute.

(e) intended primarily "to allow a party with a favorable judgment an opportunity to obtain prompt relief." *Nationwide Ins. Enter. v. Ibanez,* 368 Ark. 432 (2007). And as with domestic judgments, this can be accomplished in accordance with Texas venue statutes.

After reviewing the purposes of the UEFJA, we are unpersuaded by Grossman's argument. The purposes of the UEFJA as a uniform act do not require us to read the word "venue" into the statute; to the contrary, the exclusion of venue considerations is actually more consistent with the Act's purposes. We therefore agree with Cantu's position that section 35.003 is silent regarding venue. *See Garland v. Dallas Morning News,* 22 S.W.3d 351, 358 (Tex.2000) (stating courts must take statutes as they find them and should not give strained readings to statutes).

This conclusion, which we reach in accordance with the Texas Code Construction Act, is consistent with the results reached by courts in other states with similar UEFJA filing provisions or interpreting other uniform acts. *See also Chiriboga v. State Farm Mut. Auto. Ins. Co.,* 96 S.W.3d 673, 678 (Tex.App.-Austin 2003, no pet.) (holding that, if "[n]one of the mandatory or specific permissive venue provisions apply[,]" then the general venue rule applies).

### 1. *Texas Code Construction Act*

■ When interpreting a statute, we "'consider the entire act, its nature and object, and the consequences that would follow from each construction.'" *Atascosa County v. Atascosa County Appraisal Dist.,* 990 S.W.2d 255, 258 (Tex.1999) (quoting *Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 249 (Tex.1991)). In construing the State's venue provisions with the UEFJA, we must presume the Legislature intended both chapters of the Code to be effective and further intended a just and reasonable result. *See* Tex. Gov't Code Ann. § 311.021(2)(3) (Vernon 2005). The result we reach today achieves these ends.

Texas law provides more than one method to present an order or judgment from another state to a Texas court for enforcement under the full faith and credit provision of the United States Constitution. *Bryant v. Shields, Britton & Fraser,* 930 S.W.2d 836, 841 (Tex.App.-Dallas 1996, writ denied) (citing *Walnut Equip. Leasing Co. v. Wu,* 920 S.W.2d 285, 286 (Tex. 1996)). A judgment creditor may file the foreign judgment with the clerk of the court as provided in section 35.003. Tex. Civ. Prac. & Rem.Code Ann. § 35.003 (Vernon 2005). Alternatively, the creditor may bring an action to enforce the judgment. *Id.* § 35.008. These are two routes to the same end, i.e., that of Texas recognition of the foreign judgment. And as we have previously observed, the latter method "has the same character as any other civil proceeding...." *Brown v. Lanier Worldwide, Inc.,* 124 S.W.3d 883, 902 (Tex. App.-Houston [14th Dist.] 2004, no pet.). Consequently, a defendant may challenge venue in the enforcement action just as in any other civil proceeding. *See* Tex.R. Civ. P. 86.

It would therefore be inconsistent to hold that, by electing the procedure set forth in section 35.003, a judgment creditor could deprive the debtor of the opportunity he would otherwise possess to challenge the creditor's choice of venue. *See id.; cf. Fleming v. Ahumada,* 193 S.W.3d 704, 712 (Tex.App.-Corpus Christi 2006, no pet.) ("We will not endorse an interpretation of section 15.012 that creates a loophole for parties to circumvent the venue statutes in order to litigate their claims any place they choose."). In addition, such an ap-

proach cannot be harmonized with the purposes of the UEFJA we have previously enumerated, for it would alter the rights of the parties, enlarging the rights of foreign-judgment creditors beyond the rights of the holders of Texas judgments. And finally, such a result would be inconsistent with section 311.028 of the Code Construction Act, which requires us to construe a uniform act "to effect its general purpose to make uniform the law of those states that enact it." Tex. Gov't Code Ann. § 311.028 (Vernon 2005). We therefore construe section 35.003 of the UEFJA in a manner that is consistent with section 35.008 of the same Act, with the venue provisions of the same Code, and with the laws of our sister states.

### 2. Other States Considering Venue for UEFJA Filings

#### a. Oklahoma

In *Garrett v. Okla. Panhandle State Univ.*, the Oklahoma Court of Civil Appeals held the general venue statutes applied to Oklahoma's UEFJA unless, as was found in the case before the court, a particular venue statute applied. 156 P.3d 48, 51 (Okla.Civ.App.2006), *cert. denied,* — U.S. ——, 127 S.Ct. 2980, 168 L.Ed.2d 720 (2007). In *Garrett,* the judgment debtor replied to the filing of a Texas judgment by filing a motion to transfer venue. *Garrett,* 156 P.3d at 49. The judgment creditor "responded that he was not filing a petition and that venue was not relevant." *Id.* at 50. As in the present case, the creditor argued that "[t]he Uniform Enforcement of Foreign Judgment Act stated he could file his judgment in any county, and he had followed the procedures set forth." The trial court rejected that argument, granted the motion, and the Oklahoma appellate court affirmed. In reaching its conclusions, the Oklahoma court began its analysis with the Uniform Act.

Oklahoma's UEFJA is substantively similar to Texas's, permitting filing of a foreign judgment " 'in the office of the court clerk of any county of this state.' " *See id.* at 50 n. 1 (quoting Okla. Stat. tit. 12, § 721 (2001)). The venue provision in question required an " 'action against a public officer for an act done by him in virtue, or under color of his office, or for neglect of his official duties' " to " 'be brought in the county where the cause, or some part thereof arose.' " *See id.* at 50 n. 2 (quoting Okla. Stat. tit. 12, § 133 (2001)). Citing Oklahoma's analog to section 35.003(c), the court observed, "Registering a foreign judgment in some cases may bring a judgment debtor into court for litigation purposes.... Consequently, venue becomes an important legal right that is not embedded in the Act itself." *Id.* at 50 (citing Okla. Stat. tit. 12, § 721 (2001)). The court also referred to the "possible expense and inconvenience [to the judgment debtor] of challenging an action hundreds of miles from home." *Id.* (citing *Ex parte Wells,* 567 So.2d 388 (Ala.Civ.App. 1990)). This concern is necessarily of even greater significance in Texas, which is nearly four times the size of Oklahoma. We see no reason to conclude that Texas legislators did not share this concern.

#### b. Georgia

*Cherwood, Inc. v. Marlin Leasing Corp.* involved a UEFJA provision virtually identical to section 35.003(a) and a general venue provision of the Georgia Constitution that establishes venue for "civil cases." 268 Ga.App. 64, 601 S.E.2d 356, 357 (Ga.Ct.App.2004) (quoting Ga. Const. art. VI, § 2, ¶ VI. (1983)). As here, the Georgia Court of Appeals began with its Uniform Enforcement of Foreign Judgments statute and rejected an argument similar to Grossman's argument:

> We have characterized the Uniform Act as a "summary procedure" for endowing a filed foreign judgment with the same effect as a judgment of the court

in which it is filed. [The judgment creditor] argues that the Uniform Act therefore provides for a procedure for filing and not the commencement of a civil action subject to the general venue provision. We reject this argument because a filing under the Uniform Act may become subject to certain civil proceedings. For instance, the filing of the foreign judgment may be attacked by questioning the personal jurisdiction of the foreign court. Such a challenge would necessarily be adjudicated in the court where the filing under the Uniform Act was made, showing the court is more than simply a depository for recording the foreign judgment.

*Id.* (citations omitted).

The court then held that a filing under the UEFJA must comply with the general venue requirements of the Georgia Constitution. *Id.* To rule otherwise, the court concluded, would allow forum shopping by plaintiffs and would present defendants wishing to challenge a foreign judgment with geographical inconveniences not faced by other defendants. *Id.* at 357–58.[5] Because of its greater size, the same difficulties are presented in Texas to an even greater degree.

#### c. Alabama

In *Ex parte Wells,* the Alabama Court of Civil Appeals held its general venue provision applied to filing foreign judgments under the UEFJA. 567 So.2d 388, 390 (Ala.Civ.App.1990). The court began its analysis with its UEFJA, which provides:

[An authenticated copy of any foreign judgment] may be filed in the office of the clerk *of any circuit court of this state.* ... A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a circuit court of this state and may be enforced or satisfied in like manner. . . . .

*Id.* at 389–90 (emphasis added). And the court concluded, "In our review, we find that there is no restrictive language in our uniform act to suggest that the legislature intended that the general venue statute should not apply." *Id.* at 389.

The *Wells* court further stated that permitting venue in a county having no connection to the judgment debtor would grant such judgments "super status" and "could cause a resident defendant, who may not have been afforded procedural due process in the foreign state, the possible inconvenience and expense of defending an action hundreds of miles from his/ her county of residence." *Id.* at 389–90. Here, too, the potential inconvenience to Texas judgment debtors is magnified by our State's much greater size.

#### 3. Other Uniform Act Interpretations

##### a. Florida: Uniform Foreign–Money Judgments Act

In *Society of Lloyd's v. Sumerel,* the federal district court for the Middle District of Florida related that the foreign-judgment creditor originally filed in Ohio, and therefore cited Ohio's version of the Uniform Foreign Money–Judgments Recognition Act. No. 2:06–cv–329–FTM–29–DNF, 2007 WL 2114381, at *4 (M.D.Fla. July 20, 2007). Because the defendant had

---

5. Grossman argues *Cherwood* is not persuasive because the Georgia general venue provision is constitutionally, rather than statutorily, based. What is significant about *Cherwood,* however, is that the Georgia court's reasoning rests on the availability of a means for defendants to attack the judgments. *Cherwood, Inc.,* 601 S.E.2d at 357.

In *Schwartz v. F.M.I. Props. Corp.,* this court similarly recognized the federal constitutional requirement of providing a means for a judgment debtor to challenge the judgment and observed the UEFJA could not be read as a pure registration statute. 714 S.W.2d 97, 100 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.).

relocated to Florida, venue in Ohio was no longer proper, and the case was transferred to Florida. *Id.* The *Sumerel* court held that the statute of limitations was tolled when the judgment creditor filed the foreign judgment, "no matter how 'wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not.' " It would similarly seem that a judgment creditor under the UEFJA could toll limitations governing enforcement by filing the judgment in any court of competent jurisdiction, regardless of whether venue is proper in that county or court; thus, the ability to file the judgment in "any" Texas court of competent jurisdiction is not rendered meaningless simply because the general venue statutes also apply.

### b. Kansas: Uniform Child–Custody Jurisdiction and Enforcement Act

*In re Rumsey* was an attorney discipline proceeding. 276 Kan. 65, 71 P.3d 1150, 1159 (2003). There, the Kansas Supreme Court stated that the Uniform Child–Custody Jurisdiction and Enforcement Act "addresses jurisdiction for Kansas courts. It does not address the determination of venue between the state's district courts." *Id.* In the case before it, an attorney told a client that her divorce proceedings would have to be filed in the county where the client's children previously resided rather than the county closer to the client's work and home. *Id.* The court upheld the Disciplinary Administrator's conclusion that the attorney violated Kansas Rule of Professional Conduct 1.1 by failing to provide competent representation to a client. *Id.*

### 4. Contrary Authority

To controvert the precedential holdings of other states, Grossman directs this court's attention to *Moncrief v. Harvey.* No. 05–90–01116–CV, 1991 WL 258684, at *2 (Tex.App.-Dallas Nov.26, 1991, writ denied) (not designated for publication). In *Moncrief,* the Fifth Court of Appeals observed that venue is a pretrial matter referring to the geographical location of a suit and signifying the county in which a plaintiff has the legal right to institute and maintain an action. *Id.* The court noted that a challenge to venue can be waived, and stated that the judgment debtors had waived any venue complaints by appearing in the foreign state's courts. *Id.* In sum, the court rejected the judgment debtors' use of Texas law to challenge venue in Dallas because the debtors did not originally use Wyoming law to challenge venue in Wyoming.

But there is no reason to suppose that the judgment debtors could have predicted the need to challenge Dallas venue in the Wyoming court at the time the petition was originally filed. And under the reasoning employed in *Moncrief,* it is difficult to imagine how the debtors could have preserved error.[6] Moreover, this reasoning has not been followed by any other court, nor do we find it persuasive. Waiver of a challenge to venue in another forum simply has no bearing on whether the citizens of Texas should be denied the protections of the venue laws enacted by their own legislature. We therefore decline to follow the holding of *Moncrief.*

We find the reasoning in *Munn v. Mohler* more persuasive. 251 S.W.2d 801 (Tex. Civ.App.-Waco 1952, no writ) (suit under the Fair Labor Standards Act, 29 U.S.C.A. § 201, et seq.). As in this case, the appellee in *Munn* argued that the "Act upon which his suit was based authorize[d] him *to maintain his action in any court of competent jurisdiction and thereby super-*

---

6. For example, if the judgment debtor was the plaintiff in the original action but lost a counterclaim, the reasoning in *Moncrief* would dictate the conclusion that, having chosen the original forum, the debtor would be unable to preserve a challenge to any Texas venue.

sede[d] the provisions of the state statutes relating to venue...." *Id.* at 802(emphasis added). The Tenth Court of Appeals reasoned that, although the Act permitted an action "in any court of 'competent jurisdiction[,]'" this meant that the claimant "was thus authorized to select the forum where he would institute and prosecute such action, either in the Federal or State courts, [but] he was not thereby relieved of the duty to select a court which could properly acquire jurisdiction over the person ... sued, as well as jurisdiction over the subject matter of his suit." *Id.* at 803.[7] Moreover, the court rejected the argument that "the intended purpose of the Federal Act was to supersede the provisions of any statute relating to venue of civil actions or that the legal effect thereof was to deprive an inhabitant of Texas of his right to be sued in the county of his domicile...." *Id.* To the contrary, the court emphasized that:

> The Texas courts have held repeatedly and consistently that the legal right of a defendant to be sued in the county of his residence is a valuable right of which he may not be deprived unless the case filed against him comes clearly within one of the exceptions found in the venue statute.

*Id.*

■ Here, the UEFJA does not clearly indicate the legislature's intent to exempt the filing of a foreign judgment from the general venue laws of Texas. Like other states faced with interpretation of the UEFJA, we therefore apply the general venue laws of the state in which the foreign judgment is filed.[8]

## D. Application of the General Venue Statute

■ Because Grossman failed to overcome Cantu's venue challenge by showing that venue is proper in Harris County, the burden shifted to Cantu to show that venue is proper in Hidalgo County. Under the general venue statute, "all lawsuits shall be brought ... in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person." Tex. Civ. Prac. & Rem.Code Ann. § 15.002(a)(2).[9] In his uncontested affidavit in support of his motion to transfer venue, Cantu stated, "I have continuously resided in Hidalgo County, Texas all of my life but for the dates I attended law school many years ago.... All of my assets and business interests have been in and are currently located in Hidalgo County, Texas." Although lack of surprise does not form part of our analysis, we note that Grossman was aware that Cantu resided in Hidalgo County at the time of the Florida lawsuit. At that time, Grossman sought service of Cantu in McAllen in Hidalgo County, Texas, and in his amended petition, Grossman stated that Cantu "was and is an attorney maintaining an office in or

---

7. Fair Labor Standards Act of 1938, 29 U.S.C.A. § 216(b), 52 Stat. 1069; 75 Stat. 74 ("An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."), *amended by* Fair Labor Standards Amendments of 1974, Pub.L. No. 93–259, sec. 6(d)(1), 88 Stat. 55 (which substituted "maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction" for "maintained in any court of competent jurisdiction....").

8. Our dissenting colleague complains that this court "should not adopt a statutory interpretation of the general venue statute that frustrates both the legislature's desire for uniformity among states and the dominant purpose of the Uniform Act." On the contrary, our disposition is consistent with every State that has ruled on this very question.

9. The rule is subject to certain exceptions and provisions not relevant here.

near McAllen, Texas." Thus, any delay in enforcement that was caused by Grossman's choice to file the judgment in Harris County does not appear to be attributable to Cantu.

We conclude that under section 15.002(a)(2) of the Civil Practice and Remedies Code, venue is proper in Hidalgo, not Harris, County. We therefore hold that the trial court erred in denying Cantu's motion to transfer venue to Hidalgo County. Accordingly, we sustain Cantu's first issue, and we do not reach his second issue.

## IV. Conclusion

Having held venue is proper in Hidalgo County, the judgment of the trial court is reversed, and we remand with instructions to transfer the cause to a court of competent jurisdiction in Hidalgo County.

FROST, J., dissenting.

KEM THOMPSON FROST, Justice, dissenting.

I respectfully disagree with the majority's methodology, analysis, and conclusion.

The central issue in this case is whether Texas's general venue statute applies to a proceeding to enforce a foreign judgment under the Uniform Enforcement of Foreign Judgments Act, as adopted in Texas. Rather than look to the plain and unambiguous language of the Texas venue statute to answer this question, the majority looks to case law from other jurisdictions (with different venue provisions) and con-

cludes that the Texas venue statute applies. An analysis of the issue under the traditional method yields the opposite result. Under our state's unambiguous venue statute, a proceeding under the Uniform Enforcement of Foreign Judgments Act is not subject to a venue challenge.

### Background

After years of litigation in Florida in which appellant Mark A. Cantu was first a nonparty involved in discovery and then a defendant, a Florida trial court rendered two money judgments against him and in favor of appellee Howard S. Grossman, P.C. Cantu appealed the first judgment. The Florida intermediate court of appeals affirmed that judgment and then denied Cantu's motion for rehearing. Both Florida judgments became final by appeal.[1] Grossman sought to enforce the Florida judgments in Texas. Under Texas law, Grossman had two enforcement options: (1) comply with the Uniform Enforcement of Foreign Judgments Act, Chapter 35 of the Texas Civil Practice and Remedies Code (hereinafter "Uniform Act"), deemed the "short-cut" method by the Texas Supreme Court[2] or (2) file a common-law action to enforce the Florida judgments. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 35.001, *et seq.* (Vernon 1997); *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.,* 132 S.W.3d 477, 483–84 & n. 5 (Tex. App.-Houston [14th Dist.] 2004, pet. denied). Grossman chose to comply with the Uniform Act,[3] a statute adopted in Texas and most other states (in various forms) to

---

1. Nothing in the record reflects that Cantu appealed from the second judgment.

2. *See Don Docksteader Motors, Ltd. v. Patal Enterprises, Ltd.,* 794 S.W.2d 760, 761 (Tex. 1990).

3. The Uniform Act states in pertinent part:
 § 35.001. Definition
 In this chapter, "foreign judgment" means a judgment ... of any ... court that is entitled to full faith and credit in this state.

. . . .
§ 35.003. Filing and Status of Foreign Judgments
 (a) A copy of a foreign judgment authenticated in accordance with an act of congress or a statute of this state may be filed in the office of the clerk of any court of competent jurisdiction of this state.
 (b) The clerk shall treat the foreign judgment in the same manner as a judgment of

implement the Full Faith and Credit Clause[4] and to facilitate the interstate enforcement of judgments by providing a summary procedure for a judgment creditor to enforce a judgment in an expeditious manner.

Each of the Florida judgments is a "foreign judgment" under the Uniform Act. The record shows, and Cantu does not dispute, the operative facts demonstrating Grossman's full compliance with the Uniform Act.[5] Before the trial court's plenary power expired, Cantu filed a motion to transfer venue of the enforcement proceeding based on Texas's general venue statute, which provides in pertinent part:

Except as otherwise provided by this subchapter or Subchapter B or C [which includes allowance for other statutes prescribing permissive venue], all *lawsuits* shall be brought:

(1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;

(2) in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person;

(3) in the county of the defendant's principal office in this state, if the defendant is not a natural person; or

(4) if Subdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

TEX. CIV. PRAC. & REM.CODE ANN. § 15.002(a) (Vernon 2002)(emphasis added); *see also id.* § 15.038. In his motion to transfer venue, Cantu asserted that he resided in Hidalgo County, not Harris County. Grossman does not dispute this fact, but Grossman asserts that the general venue statute does not apply. The trial court agreed and denied Cantu's motion to transfer venue. Cantu now appeals this ruling. This court, concluding that the trial court erred, holds the general venue statute applies and requires a venue transfer to Hidalgo County. For the reasons

the court in which the foreign judgment is filed.

(c) A filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed.

§ 35.004. Affidavit; Notice of Filing

(a) At the time a foreign judgment is filed, the judgment creditor or the judgment creditor's attorney shall file with the clerk of the court an affidavit showing the name and last known post office address of the judgment debtor and the judgment creditor.

(b) The clerk shall promptly mail notice of the filing of the foreign judgment to the judgment debtor at the address given and shall note the mailing in the docket.

(c) The notice must include the name and post office address of the judgment creditor and if the judgment creditor has an attorney in this state, the attorney's name and address.

§ 35.005. Alternate Notice of Filing—Judgment Creditor

(a) The judgment creditor may mail a notice of the filing of the judgment to the judg-

ment debtor and may file proof of mailing with the clerk.

(b) A clerk's lack of mailing the notice of filing does not affect the enforcement proceedings if proof of mailing by the judgment creditor has been filed.

TEX. CIV. PRAC. & REM.CODE ANN. §§ 35.001, 35.003–35.005. (Vernon 1997).

4. *See* U.S. CONST. art. IV, § 1.

5. Specifically, (1) as judgment creditor, Grossman filed properly authenticated copies of the Florida judgments in the clerk's office of a Texas court of competent jurisdiction— the Harris County District Clerk's office; (2) when Grossman filed the Florida judgments, his attorney filed with the clerk of the court an affidavit showing the name and last known post office address of the judgment debtor (Cantu) and the judgment creditor (Grossman); and (3) the judgment creditor (Grossman) mailed a notice of filing of the judgments to the judgment debtor (Cantu) and filed a proof of mailing with the clerk.

explained below, this court instead should hold that the venue statute has no application to a proceeding to enforce a foreign judgment under the Uniform Act. Additionally, this court should overrule Cantu's other issues and affirm the trial court's judgment.

## METHODOLOGY: THE TRADITIONAL APPROACH

The outcome of this case turns on the interpretation of two statutes—the Uniform Act and the general venue statute. The court's role in interpreting these statutes is to determine the intent of the legislature. The place to start is the text of the statute. *Cash America Int'l Inc. v. Bennett*, 35 S.W.3d 12, 19 (Tex.2000) ("When interpreting a statute, we begin with the words of the statute and give them their ordinary meaning."); *see also Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) ("The starting point for interpreting a statute is the language of the statute itself. . . ."). Under this traditional method of statutory construction, the court's analysis should focus first on the words the legislature used in the venue statute and if the meaning is plain, the court should apply the statute as written. *Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex.1994). Today the court departs from this method of analysis and engages in a new methodology in which it does not address or consider the operative words of the venue statute. Instead, the court bases today's decision on what other courts in other states with other venue provisions have done. Unmoored from the wording of the Texas venue statute, the majority erroneously concludes that this venue statute applies to enforcement proceedings under the Uniform Act. By its express language, however, the Texas venue statute applies only to "lawsuits." Because an enforcement proceeding under the Uniform Act is not a "lawsuit" as that term is used in the general venue statute, the venue statute does not apply.

Though the court does not undertake an analysis of whether an enforcement proceeding is a "lawsuit," [6] the court implicitly concludes that it is. In reaching its conclusion, the court does not even mention the statutory language limiting the venue statute's application to lawsuits. Because the court does not perform a traditional statutory analysis, it misapplies the general venue statute and reaches the wrong result. Its ruling not only ignores the plain meaning of the venue statute but also frustrates the dominant purpose of the Uniform Act [7] and undermines the legislature's stated desire to achieve uniformity among the states that have adopted the uniform law.

**6.** In their appellate briefs, the parties argue the meaning of the term "lawsuit" as used in the general venue statute and whether an enforcement proceeding is a "lawsuit."

**7.** *See Lawrence Systems, Inc. By and Through Douglas–Guardian Warehouse Corp. v. Superior Feeders, Inc.*, 880 S.W.2d 203, 206 (Tex. App.-Amarillo 1994, writ denied) (exploring the intended purposes of the Uniform Act). *Lawrence Systems* examines a number of cases pertaining to the intended purpose of the Uniform Act. *Lawrence Systems, Inc.*, 880 S.W.2d at 206–07; *see Eschenhagen v. Zika*, 144 Ariz. 213, 696 P.2d 1362, 1367 (Ct.App. 1985) (explaining that one of the purposes of the Uniform Act is to provide speedy and economical enforcement of foreign judgments); *Alexander Const. Co. v. Weaver*, 3 Kan.App.2d 298, 594 P.2d 248, 250 (1979) (stating that the Uniform Act was instituted to provide a more effective and efficient time-saving procedure for enforcing foreign judgments). *See also* 50 C.J.S. *Judgments* § 984 (2007) (providing that the Uniform Act is designed to simplify enforcement procedures by eliminating the necessity of multiple lawsuits).

## ANALYSIS: THE MEANING OF THE STATUTORY LANGUAGE

The court should analyze this issue under the traditional method and in a way that promotes legislative intent and purpose. The court's focus should be on the language of the venue statute and whether the term "lawsuit" encompasses an enforcement proceeding under the Uniform Act. If an enforcement proceeding under the Uniform Act is not a "lawsuit," then the venue statute does not apply.

### Is a Uniform Act proceeding a "lawsuit" under the general venue statute?

The word "lawsuit" is defined in various ways in both legal[8] and non-legal dictionaries.[9] Many dictionaries, including those that were current at the time the Texas legislature enacted the venue statute, contain a definition of the word that embodies as a necessary component a claim or cause of action,[10] a feature that is not characteristic of an enforcement proceeding under the Uniform Act. The claim-component definition suggests that a "lawsuit" is a proceeding but that not every proceeding is a "lawsuit."

At the time the Uniform Act is invoked, the "lawsuit" is over and the judgment is final.[11] All that remains is its enforcement.[12] Enforcement of a judgment occurs, if at all, post-lawsuit. Venue, by contrast, is a pre-trial concept.[13] It refers to the place or places in which plaintiffs may, or in some cases must, bring their lawsuits; venue does not speak to the location in which a party asserts post-judgment defenses or seeks to reopen, vacate, stay, enforce, or satisfy a judgment.[14] *See*

---

**8.** *Compare* BLACK'S LAW DICTIONARY 887 (6th ed.1990) (defining "lawsuit" as "[a] vernacular term for a suit, action, or cause instituted or depending [sic] between two private persons in the courts of law"), *with* BLACK'S LAW DICTIONARY 887, 895 (7th ed.1999) (defining "lawsuit" as synonymous with "suit" and defining "suit" as "any proceeding by a party or parties against another in a court of law").

**9.** *Compare* WEBSTER'S NEW INT'L DICTIONARY 1280 (3d ed.1961) (defining "lawsuit" as "a suit in law: a case before a court: any of various technical legal proceedings") *with* VIII THE OXFORD ENGLISH DICTIONARY 720 (2d ed.1989) (defining "lawsuit" as "a suit in law; a prosecution of a claim in a court of law"), *and* RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1091 (2d ed. unabr.1987) (defining "lawsuit" as "a case in a court of law involving a claim, complaint, etc. by one party against another; suit at law").

**10.** Though the current edition of Black's Law Dictionary defines "lawsuit" as "any proceeding by a party or parties against another in a court of law," earlier editions—the ones that were current when the legislature enacted the venue statute—contain a narrower primary definition of the word that embodies as a necessary component a claim or cause of action. *See also,* VIII THE OXFORD ENGLISH DICTIONARY 720 (2d ed.1989) (defining "lawsuit" as "a suit in law; a prosecution of a claim in

a court of law"); RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1091 (2d ed. unabr.1987) (defining "lawsuit" as "a case in a court of law involving a claim, complaint, etc. by one party against another; suit at law").

**11.** *See Schwartz v. F.M.I. Properties Corp.,* 714 S.W.2d 97, 100 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.) (noting that the Uniform Act is an enforcement statute and a foreign judgment is not entitled to full faith and credit unless it is final).

**12.** *Schwartz,* 714 S.W.2d at 100 (providing that the Uniform Act is an enforcement statute); *Moncrief v. Harvey,* No. 05–90–01116–CV, 1991 WL 258684, at *2 (Tex.App.-Dallas Nov.26, 1991, writ denied) (not designated for publication).

**13.** *Moncrief,* 1991 WL 258684, at *2.

**14.** The majority states that the *Moncrief* court based its holding on waiver. *See ante* at p. 740. While the *Moncrief* court does mention waiver, it based its holding mainly on the fact that the Uniform Act allows the judgment debtor post-judgment procedures to challenge the judgment; whereas venue is a pre-trial matter regarding the location of a lawsuit that does not apply to post-judgment procedures to challenge a judgment. *Moncrief,* 1991 WL

TEX. CIV. PRAC. & REM.CODE ANN. § 35.003; *Moncrief*, 1991 WL 258684, at *2 (holding that trial court did not err in denying judgment debtors' motion to transfer venue in proceeding under Uniform Act because pre-trial matter of venue does not apply to Uniform Act proceeding and because Uniform Act unambiguously allows filing of foreign judgment in any court of competent jurisdiction in Texas). These post-judgment proceedings necessarily take place in the trial court that rendered the judgment—the court in which the judgment creditor filed the foreign judgment, which, under the Uniform Act, may be any court of competent jurisdiction in Texas.[15]

No court has ever applied Texas's venue statute to a post-judgment proceeding or held that a post-judgment proceeding is a "lawsuit" within the meaning of that statute, and the majority does not explain how legislative intent is honored by doing so in this instance. The legislature's intent was to provide a summary procedure for the enforcement of foreign judgments—a speedy alternative to filing a lawsuit to enforce the judgment of a sister state. In holding that an enforcement proceeding

under the Uniform Act is a "lawsuit," the majority seems to have blurred the distinction between a Uniform Act proceeding and a common law action. Because the case under review is not a common law action, it should not be analyzed as one.

Under the paradigm of the Uniform Act, a judgment creditor no longer has to file a lawsuit to enforce the judgment of a sister state. Instead, the Uniform Act gives the option of a "short-cut" around a common law action. In equating a contested enforcement proceeding under the Uniform Act with a lawsuit, the majority is ignoring the clear distinction between a common law action to enforce a foreign judgment and the "short cut method" for enforcement outlined in the Uniform Act. *See Don Docksteader Motors*, 794 S.W.2d at 761. Though venue rights would be available under the common law method (which requires the filing of a lawsuit), they are not available when a judgment creditor seeks enforcement under the Uniform Act. In holding that venue may be asserted in either scenario, the majority is effectively turning back the clock to pre-Uniform Act days, when the only means of enforcing a foreign judgment was to file a lawsuit.

---

258684, at *2. In *Moncrief*, the judgment debtor appeared in the lawsuit in Wyoming and did not challenge venue, thus waiving any venue complaints. *Id.* When the *Moncrief* court stated that the judgment debtor waived venue, it was indicating that venue is a pre-trial matter that was resolved in Wyoming and that venue has no place in the post-judgment enforcement proceedings. *Id.*

15. *Richards v. Comm'n for Lawyer Discipline*, 81 S.W.3d 506, 508 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (stating that proceedings directly attacking a Texas judgment must be brought in the court that rendered the judgment); *Dear v. Russo*, 973 S.W.2d 445, 448 (Tex.App.-Dallas 1998, no pet.); ("Challenges to foreign judgments filed under the Uniform Act are generally in the nature of post-judgment proceedings because the filing of the foreign judgment instantly creates a judg-

ment enforceable in Texas."). The majority states that its interpretation does not render this language meaningless because, under its interpretation, the judgment creditor's filing of a foreign judgment in any county in Texas would count for purposes of determining whether the foreign judgment has become dormant. *See ante* at p. 740. This argument lacks merit because counting the filing in this way alone does not give effect to the statutory language stating that the creditor may enforce the judgment in the same manner as a judgment of the court in which the foreign judgment was filed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 35.003(b), (c). A judgment rendered by the trial court below cannot be transferred to Hidalgo County for enforcement based on allegedly improper venue; rather, such a judgment must be enforced by the judge of the trial court below. *See Richards*, 81 S.W.3d at 508.

The legislature did not intend for courts to treat Uniform Act proceedings as common law actions for enforcement of a foreign judgment.

Viewed in this context, it is not reasonable to apply a pre-trial concept like venue to a post-judgment proceeding. Nor is it reasonable to conclude that the term "lawsuit" as used in this context would encompass an enforcement proceeding.

Under the unambiguous language of the general venue statute, set forth in section 15.002 of the Texas Civil Practice and Remedies Code,[16] that statute applies to a "lawsuit" brought by one or more plaintiffs asserting one or more claims against one or more defendants based on events or omissions. See TEX. CIV. PRAC. & REM.CODE ANN. § 15.002(a). In some published cases, parties unnecessarily have added procedural elements of lawsuits to enforcement proceedings under the Uniform Act.[17] However, a judgment creditor is not required to do so, and Grossman did not do so in this case. Grossman, electing the short-cut method, followed precisely the procedures the legislature outlined in the Uniform Act. See TEX. CIV. PRAC. & REM. CODE ANN. § 35.001, et seq. The resulting proceeding had none of the indicia of a lawsuit.

*No Petition.* In Texas courts, a lawsuit is brought by filing a petition. See TEX.R. CIV. P. 22; *Travelers Ins. Co. v. Brown,* 402 S.W.2d 500, 503 (Tex.1966). Grossman never filed a petition or any other pleading, nor was he required to do so under the Uniform Act.[18] Because there are no pleadings in a Uniform Act proceeding, there is no mechanism for applying Texas venue procedure. In Texas, the parties' pleadings are used to establish the venue facts—the plaintiff pleads facts showing that venue is proper, and these facts are then taken as true unless the defendant specifically denies these facts in the defendant's answer. See TEX.R. CIV. P. 97(3); *GeoChem Tech Corp. v. Verseckes,* 962 S.W.2d 541, 543 (Tex.1998). The legislature's decision to omit a pleading requirement from Uniform Act proceedings strongly suggests that the legislature did not intend for the venue statute to apply to these proceedings.[19] Likewise, the lack of

16. All statutory references in this opinion are to the Texas Civil Practice and Remedies Code unless otherwise specified.

17. Perhaps due to the unusual nature of proceedings under the Uniform Act, parties sometimes unnecessarily have filed petitions and answers and served citation in proceedings under the Uniform Act. See *Walnut Equip. Leasing Co. v. Wu,* 920 S.W.2d 285, 285–86 (Tex.1996) (noting that parties filed petitions and answers and served citation and the judgment creditor subsequently amended its petition to assert only a common-law enforcement action; nonetheless the Texas Supreme Court gave effect to foreign judgment under the Uniform Act because judgment debtors did not timely challenge the judgment after the judgment creditor satisfied the requirements of the Uniform Act). The Uniform Act does not require, for the enforcement of a judgment of a sister state, attaching pleadings to the judgment or introducing evidence. *Harbison–Fischer Mfg. Co., Inc. v. Mohawk Data Sciences Corp.,* 823 S.W.2d 679, 685 (Tex.App.-Fort Worth 1991), *judgment set aside by agr.* 840 S.W.2d 383 (Tex.1992).

18. Grossman filed two properly authenticated Florida judgments, an affidavit showing the name and last known post office address of the judgment debtor and the judgment creditor, and proof of mailing of the notices of filing of the foreign judgments, just as the legislature specified in the Uniform Act.

19. A proceeding under the Uniform Act is a unique procedural animal because the filing (in compliance with the statute) that commences the proceeding also instantaneously creates an enforceable Texas judgment. In *Walnut Equipment Leasing Co. v. Wu,* the judgment creditor invoked the Uniform Act to enforce a Pennsylvania judgment against judgment debtors in Texas. 920 S.W.2d 285 (Tex.1996) (per curiam). Though not required to do so by the Uniform Act, the judgment creditor filed a petition and served the judgment creditor with process. See *id.* Al-

any other indicia of a lawsuit, as demonstrated below, is strong evidence that an enforcement proceeding under the Uniform Act is not a "lawsuit."

though the judgment creditor did more than was required by the Uniform Act, it satisfied all the Uniform Act requirements so that the filing of the judgment and affidavit contained in the petition constituted a Texas judgment. *See id.* The only filing the judgment debtors made within thirty days was a general denial. *See id.* The Texas Supreme Court held that because the judgment debtors did not file a motion that would extend the trial court's plenary power, all subsequent actions in the trial court were a nullity and the appeal was untimely. *See id.* at 285–86. In so ruling, our high court alluded to a characterization of a Uniform Act proceeding made by the court of appeals below (which happened to be this court), stating:

> As the court of appeals noted, *id.* at 277, when a judgment creditor proceeds under the [Uniform Act], the filing of the foreign judgment comprises both a plaintiff's original petition and a final judgment.

*Id.* at 286. Similarly, in the portion of this court's opinion in *Wu* with which the high court agreed, this court noted that the filing of a judgment under the Uniform Act begins the proceeding but also instantly creates a final judgment:

> A filed foreign judgment has the same effect, and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed. TEX. CIV. PRAC. & REM.CODE ANN. § 35.003(c). When a judgment creditor chooses to proceed under the Uniform Act, the filing of the foreign judgment *partakes of the nature* of a plaintiff's original petition and a final judgment: *the filing initiates the enforcement proceeding*, but it also instantly creates a Texas judgment which is enforceable.

*Wu v. Walnut Equipment Leasing Co.*, 909 S.W.2d 273, 277 (Tex.App.-Houston [14th Dist.] 1995) (emphasis added), *rev'd* 920 S.W.2d 285 (Tex.1996). In the course of describing this unique aspect of a Uniform Act proceeding, both appellate courts in *Wu* made a figurative reference to a "petition" to convey the concept that the filing of the foreign judgment in accordance with the Uniform Act

*No Citation or Service of Process.* In Texas, a party bringing suit must request the clerk of court to issue citation and arrange for service of citation and petition (or waiver thereof) on the defendants in

commences the enforcement proceeding. From context, it is apparent that these courts and those that have cited this language were not saying that the filing of the judgment under the Uniform Act literally is a petition; indeed, they could not have intended a literal meaning because in the same breath they stated that the filing of the foreign judgment also creates an enforceable Texas judgment, which is contrary to the nature of a petition. *See Walnut Equipment Leasing Co.*, 920 S.W.2d at 285–86; *Wu*, 909 S.W.2d at 277. In making these statements these courts cited and relied on the unambiguous language of the Uniform Act, which does not require the filing of a petition. *See Walnut Equipment Leasing Co.*, 920 S.W.2d at 285–86; *Wu*, 909 S.W.2d at 277. There was no issue in *Wu* as to whether a Uniform Act proceeding is a "lawsuit" under the general venue statute. *See Wu*, 909 S.W.2d at 277. In *Mindis Metals*, the judgment creditor did not file a petition; rather, it filed an authenticated judgment in accordance with the procedures of the Uniform Act. *See Mindis Metals, Inc.*, 132 S.W.3d at 483. Expressing the same concept as the courts in *Wu* but using different words, this court stated that when the judgment creditor begins the proceeding by filing an authenticated copy of a foreign judgment under the Uniform Act, the judgment becomes enforceable as a Texas judgment on the date it was filed. *See id.* Though the judgment creditor in *Wu* and judgment creditors in other Uniform Act cases have gratuitously and unnecessarily filed petitions, under the unambiguous language of the Uniform Act, judgment debtors need not do so, and Grossman did not do so in this case. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 35.001, 35.003–35.005; *Walnut Equipment Leasing Co.*, 920 S.W.2d at 285–86; *Mindis Metals, Inc.*, 132 S.W.3d at 483; *H. Heller & Co., Inc. v. La.-Pac. Corp.*, 209 S.W.3d 844, 849 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) (stating that judgment creditor first initiated common law suit to enforce a foreign judgment but then asserted a Uniform Act proceeding by means of an amended petition satisfying the Uniform Act, which the judgment debtor timely contested).

the lawsuit. *See* TEX.R. CIV. P. 99–107. The district clerk never issued and Cantu was never served with any citation. Because in an enforcement proceeding, there is no petition or other instrument containing claims or causes of action, Cantu was never served with any such pleading; rather, Cantu received only what the legislature prescribed—a notice of filing of the foreign judgments.[20]

*No Answer.* In Texas, a party against whom a lawsuit has been brought must timely file a written answer to avoid the rendition of a default judgment against it. *See generally* TEX.R. CIV. P. 83–85. Cantu never filed any answer in the trial court. Because Grossman followed all the procedures of the Uniform Act, Grossman held two Texas judgments in the trial court as of October 10, 2005, the date he filed the Florida judgments. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 35.003; *Mindis Metals, Inc.,* 132 S.W.3d at 483 (stating that when judgment creditor filed an authenticated copy of a foreign judgment under the Uniform Act, "[t]he judgment became enforceable as a Texas judgment on the date it was filed"). When Cantu responded, there was no point in filing an answer.

*No Claims.* In Texas, a party bringing suit must state its claims sufficiently to give notice thereof to the defendant and to demand the judgment that the party seeks based on those claims. *See* TEX.R. CIV. P. 47; TEX. CIV. PRAC. & REM.CODE ANN. § 15.002 (referring to "the county in which all or a substantial part of *the events or omissions giving rise to the claim* occurred" (emphasis added)); TEX. CIV. PRAC. & REM.CODE ANN. § 15.006 (stating that "[a] court shall determine the venue of a suit based on the facts existing at the time the *cause of action that is the basis of the suit* accrued" (emphasis added)). Grossman never stated any claims or sought any relief in the trial court, nor did the Uni-

form Act require him to do so. *See Harbison–Fischer Mfg. Co., Inc.,* 823 S.W.2d at 685 (concluding that the Uniform Act does not require pleadings or evidence to enforce a final judgment). Grossman, in accordance with the Uniform Act, filed authenticated copies of the final Florida judgments into which its claims already had merged. In a Uniform Act proceeding, the judgment creditor converts a foreign judgment into a Texas judgment that can then be enforced against non-exempt assets of the judgment debtor when and if there are such assets in Texas. The Uniform Act requires that notice be given to the judgment debtor. Regardless of whether the judgment debtor chooses to challenge the new Texas judgment in the trial court, the proceeding is never one in which the trial court entertains claims against the judgment debtor.

*No Trial or Other Disposition.* In Texas, when a party brings a lawsuit and continues to prosecute it, the trial court eventually resolves the litigation by dismissing the claims or by rendering a judgment, either after trial or by some pre-trial disposition allowed under Texas procedure. *See generally* TEX.R. CIV. P. 301,166a. Under the Uniform Act, the trial court below could not have conducted a trial or rendered judgment based on a pre-trial dispositive motion; the act that opened the proceeding in the court below was the filing of two judgments that immediately became Texas judgments. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 35.003; *Mindis Metals, Inc.,* 132 S.W.3d at 483; *Urso v. Lyon Fin. Servs., Inc.,* 93 S.W.3d 276, 279 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (stating that "[a] properly filed foreign judgment has the effect of initiating an enforcement proceeding and instantly rendering a valid Texas judgment"). Therefore, the only possible action the trial

---

**20.** *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 35.005, 34.004.

court could have taken was to consider timely asserted post-judgment motions or bills of review seeking to vacate the judgments. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 35.003; *Mindis Metals, Inc.,* 132 S.W.3d at 483.

*No Need for Trial Court to Assert In Personam Jurisdiction.* After filing his motion to transfer venue, Cantu filed a post-judgment instrument—a motion for new trial, in which he sought to set aside the judgments based on various grounds, including alleged violations of Cantu's due process rights and an alleged lack of personal jurisdiction. In Texas, when a party files a lawsuit, the defendant may assert a special appearance to contest personal jurisdiction if the trial court's exercise of personal jurisdiction over that defendant would violate due process. *See* TEX.R. CIV. P. 120a; *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 575 (Tex.2007). Although a judgment debtor may seek to vacate a judgment filed under the Uniform Act by asserting that the court *in the*

*sister state* lacked personal jurisdiction to render judgment against the judgment debtor (as Cantu asserted in the trial court below [21]), it is no defense to enforcement that the court of the state in which the judgment is filed (Texas) cannot assert personal jurisdiction over the judgment debtor.[22] Neither the Uniform Act nor the United States Constitution require in personam jurisdiction over the judgment debtor in the state in which a foreign judgment is filed.[23] If judgment debtors such as Cantu cannot assert a special appearance challenging personal jurisdiction in a Uniform Act enforcement proceeding, then it would be anomalous for the legislature to allow them to challenge venue.

These points amply demonstrate that an enforcement proceeding under the Uniform Act lacks any of the indicia of a "lawsuit" as that term is generally understood in Texas jurisprudence. Logically, one might reason that a proceeding that does not "walk, talk, or quack" like a lawsuit is not a lawsuit. *See City of San*

21. Although Cantu is subject to personal jurisdiction in Texas, the application of Chapter 15 to all proceedings under the Uniform Act could hamper the collection of judgments in various circumstances. Creditors generally would need to file the foreign judgment in a judgment debtor's county of residence in Texas and then potentially to record the Texas judgment or take other collection actions in other counties in which nonexempt assets are located. Furthermore, if, in a foreign judgment, a plaintiff not residing in Texas is awarded recovery against a defendant not residing in Texas, based on an occurrence that is not connected to Texas, and if the judgment creditor wished to use the Uniform Act to enforce the judgment against property in Texas (for example, to garnish a debt owed to the judgment debtor by a Texas creditor), if Chapter 15 were to apply, then there would be no "venue" available to file the foreign judgment. Due to the applicability of personal-jurisdiction requirements and the availability of a forum-non-conveniens dismissal in favor of litigating claims in other states, this problem should not arise in a lawsuit in which a

nonresident plaintiff sues a nonresident defendant asserting claims based on an occurrence with no connection to Texas.

22. *See Lenchyshyn v. Pelko Elec., Inc.,* 281 A.D.2d 42, 723 N.Y.S.2d 285, 289–90 (N.Y.App.Div.2001).

23. *See Shaffer v. Heitner,* 433 U.S. 186, 210 & n. 36, 97 S.Ct. 2569, 2583 & n. 36, 53 L.Ed.2d 683 (1977) (stating that once a court with jurisdiction over the subject matter and the parties determines that one person is a debtor to another, there should be no due process problem in the judgment creditor's realizing upon the property of the judgment debtor in another state in which the debtor has property but is not subject to in personam jurisdiction); *Lenchyshyn,* 723 N.Y.S.2d at 289–90 (stating that court in which judgment creditor files judgment under New York version of Uniform Act need not be able to exercise in personam jurisdiction over the judgment debtors and collecting cases from many other states).

*Antonio v. Hartman,* 201 S.W.3d 667, 671 (Tex.2006) (concluding that motion was a motion for rehearing because it "walked, talked, and quacked like a motion for rehearing"). Cantu, however, has convinced the majority that a proceeding with no petition, citation, service of process, answer, claims, trial or other disposition is nonetheless a "lawsuit."

Although the majority does not discuss or analyze the operative statutory language, it implicitly concludes that a Uniform Act proceeding is a "lawsuit" as that term is used in the general venue statute. This conclusion cannot withstand either contextual scrutiny (as demonstrated above) or harmonization of the provisions of the general venue statute with those of the Uniform Act, as demonstrated below.

"Statutory construction ... is a holistic endeavor." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988). Rather than relying on out-of-state cases not involving the Texas venue statute to determine the applicability of the Texas venue statute, the court should base its analysis on the statutory language and analyze the venue statute in the context of the Uniform Act. In doing so, the court should be guided by the basic principle that the two statutes should be read as a harmonious whole, with their individual components interpreted within their statutory context in a manner that furthers the legislative purposes of both. The court's implicit conclusion that "lawsuit" includes a post-lawsuit proceeding not only ignores the context for proper application of the general venue statute but also spoils the dominant legislative purpose of the Uniform Act—to facilitate the interstate enforcement of judgments by providing a summary procedure for a judgment creditor to enforce its judgment in an expeditious manner.

By implicitly finding that the summary procedure set forth in the Uniform Act is a "lawsuit," this court (1) effectively thwarts any expeditious treatment of foreign judgments and (2) arms judgment debtors with rights and dilatory tools neither intended by the legislature nor supported by the plain language of the Uniform Act. Nothing in the statute suggests the legislature intended judgment debtors to have venue rights in a post-judgment proceeding, especially one that is supposed to be a summary procedure, i.e., a short, concise, and immediate proceeding that would facilitate enforcement of judgments in an expeditious manner.[24] The majority does not explain the logic of injecting a dilatory plea and all its trappings into what is supposed to be a "short-cut" procedure. Nor does the majority explain how doing so furthers the legislative purpose of either statute.

Moreover, in overriding the Uniform Act's summary procedure, the court hinders rather than promotes uniformity among the states. By superimposing Texas's venue laws onto the Uniform Act, judgment creditors seeking to enforce foreign judgments in this state will face Texas's unique venue scheme with its distinct features that are not contained in any other states' versions of the Uniform Act. Neither the Texas legislature nor the legislatures of the other 48 states that have adopted forms of this uniform statute require judgment creditors to comply with the requirements of the Texas venue statute. Today's ruling makes enforcement of foreign judgments in Texas different than in other places. Thus, by making proceedings under the Uniform Act subject to Texas's venue provisions, the court undermines rather than fosters uniformity among the states.

In its reasoning, the majority confuses decision making among courts with unifor-

---

**24.** *See supra* note 7 (providing authority that explores the purpose of the Uniform Act).

mity of statutes among the states. Uniformity is not achieved by adopting the reasoning of courts in other states whose focus is on features unique to their states; rather, uniformity is achieved by construing the terms of the common statute in a way that will promote regularity and sameness in its application. Superimposing the Texas venue scheme onto the Uniform Act does not promote uniformity because other states have not made the Texas venue scheme part of their versions of the Uniform Act. Adding provisions that are not contained in the Uniform Act promotes dissimilarity, not uniformity.

The Uniform Act represents a comprehensive legislative scheme distinctly applicable to the enforcement of foreign judgments. Today this court holds that those enforcing foreign judgments in Texas—unlike anywhere else in the country—not only must follow the stated provisions of the Uniform Act but also must comply with the Texas venue rules which, as demonstrated below, conflict with the plain wording of the Uniform Act. The Texas legislature did not intend to upset the Uniform Act's simple, straight-forward, and consistent provisions by applying the Texas general venue statute to enforcement proceedings. By holding otherwise, the court ignores the Uniform Act itself and thwarts its underlying purpose.

This court should not adopt a statutory interpretation of the general venue statute that frustrates both the legislature's desire for uniformity among states and the dominant purpose of the Uniform Act. The unambiguous language of Chapter 15 (Venue) and Chapter 35 (the Uniform Act) shows that a proceeding under the latter is not a "lawsuit" under the former. Therefore, the court errs in holding that the venue rules apply to Chapter 35 proceedings.

**Even if venue principles applied to an enforcement proceeding under the Uniform Act, section 35.003 would constitute a permissive venue statute that would take precedence over section 15.002.**

Even if, contrary to the above analysis, venue principles did apply to the filing of a foreign judgment under the Uniform Act, section 15.002 would apply only if no other statute prescribes permissive venue. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 15.002, 15.038. Grossman argues that section 35.003 is a permissive venue statute. The majority summarily dismisses Grossman's argument, apparently because section 35.003 does not contain the word "venue." [25] By attaching such importance to nomenclature, the majority improperly elevates form over substance. *See, e.g., Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex. 1999). The word "jurisdiction" is found in section 35.003, and the word "venue" is not; however, these words do not have a talismanic effect in determining whether this statute is a permissive venue statute or a jurisdiction statute. *See id.* (stating that statutory interpretation should not be mechanistic and should not elevate form over substance). Texas courts have found statutes to be venue statutes, even though they contained the word "jurisdiction" and did not contain the word "venue." [26]

Subject-matter jurisdiction refers to a court's power to decide a case, whereas

---

**25.** *See ante* at p. 736–37.

**26.** *See In re Parr*, 199 S.W.3d 457, 461 (Tex. App.-Houston [1st Dist.] 2006, no pet.) (holding that statute is a venue statute even though it contains the word "jurisdiction" and does not contain the word "venue"); *Harrington v.*

*State*, 363 S.W.2d 321, 322–23 (Tex.Civ.App.-Austin 1962, writ ref'd n.r.e.) (same); *Traders & Gen. Ins. Co. v. Curby*, 103 S.W.2d 398, 399 (Tex.Civ.App.-Waco 1937, no writ) (same); *Lloyds Cas. Co. of New York v. Lem*, 62 S.W.2d 497, 498–99 (Tex.Civ.App.-Galveston 1933, writ dism'd) (same).

venue refers to the proper or possible place or places for a lawsuit. *See Radenovich v. Eric D. Fein, P.C. & Assocs.*, 198 S.W.3d 858, 860 (Tex.App.-Dallas 2006, no pet.). Under section 35.003(a), the judgment creditor may file a properly authenticated copy of a foreign judgment "in the office of the clerk of any court of competent jurisdiction of this state." TEX. CIV. PRAC. & REM.CODE ANN. § 35.003. Notably, in this statute the legislature does not state which Texas courts have subject matter jurisdiction over filings of foreign judgments under the Uniform Act. Under section 35.003, judgment creditors must file foreign judgments in a court that would have had subject-matter jurisdiction to issue them in the first instance. Though the district court below is such a court, section 35.003 does not establish this jurisdiction. The Texas Constitution and the Government Code do.[27]

In section 35.003, the Texas Legislature told judgment creditors exactly where they may file foreign judgments—in any court of competent jurisdiction in the State of Texas. Language similar to that in section 35.003 has been held to be venue language.[28] Although venue statutes often establish venue in one or more Texas counties, a statute allowing for proper venue in any Texas county is still a valid venue statute.

Under the majority's interpretation of section 35.003, the phrase "of this state" means "in a county in which venue is proper under the general venue statute." *See supra* p. 749. This interpretation fails to give effect to the plain meaning of this language from section 35.003, under which a judgment creditor such as Grossman may assert an enforcement proceeding in whatever court of competent jurisdiction in Texas it chooses.[29] Grossman complied

---

**27.** *See* TEX. CONST. art. V, § 8; TEX. GOV'T CODE ANN. § 24.007 (Vernon 2004); *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 74–75 (Tex. 2000).

**28.** *See SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 434 F.Supp.2d 581, 581–83 (C.D.Ill.2006) (construing agreement that "venue shall be proper in a court of competent jurisdiction sitting in the State of Illinois" as allowing suit in any court of competent jurisdiction in Illinois and enforcing this agreement to allow suit in the United States District Court for the Central District of Illinois, even though venue in this district would be improper under the federal venue statutes); *Gambill v. Town of Ponder*, 494 S.W.2d 808, 811 (Tex.1973) (discussing with approval case in which court of appeals held that revised civil statute allowing suit "in any Court of competent jurisdiction in Travis County" was permissive venue statute that applied in place of general venue statute and that allowed suit to be filed in any court in Travis county having jurisdiction); *Morris v. Scaling*, 347 S.W.2d 377, 379 (Tex.Civ.App.-Fort Worth 1961, writ dism'd) (holding that section of Texas Business Corporation Act allowing petition to be filed in "any court of competent jurisdiction in the county in which the

principal office of the corporation is located" was a venue statute). Regardless of any differences that there may be between the law governing the enforcement of forum selection clauses and the law regarding venue selection clauses, the court in *SMS Demag Aktiengesellschaft* interpreted language similar to that in section 35.003 as allowing venue of an action in any court of competent jurisdiction in the state. *See SMS Demag Aktiengesellschaft*, 434 F.Supp.2d at 581–83.

**29.** The majority relies on *Munn v. Mohler*, 251 S.W.2d 801 (Tex.Civ.App.-Waco 1952, no writ). *See ante* at p. 740–41. That case is not on point. In *Munn*, it was uncontested that the plaintiff had filed a lawsuit based on a claim provided in a federal statute for the recovery of overtime compensation. *See Munn v. Mohler*, 251 S.W.2d 801, 802–3 (Tex. Civ.App.-Waco 1952, no writ). *Munn* did not involve the domestication and enforcement in Texas of a final judgment from another state. *See id.* Moreover, the federal statute did not state that such suits could be filed in any court of competent jurisdiction in Texas; whereas, the Uniform Act refers to any court of competent jurisdiction in Texas. Even if *Munn* were on point, it is not binding on this

with all of the requirements of the Uniform Act, and filed the Florida judgments in a Texas court of competent jurisdiction. But, under the majority's interpretation, Grossman is not permitted to enforce the judgments in any Texas county; rather, Grossman must file in the county in which all or a substantial part of the "events or omissions giving rise to the claim" occurred or in which Cantu resided when "the cause of action accrued." This interpretation is contrary to the plain meaning of "any court of competent jurisdiction of this state." [30] *See Agbor*, 952 S.W.2d at 505 (stating courts should give effect to the unambiguous meaning of a statute's language); *Revey v. Peek*, 951 S.W.2d 920, 924 (Tex.App.-Texarkana 1997, no writ) (stating that section 35.003 clearly provides that a foreign judgment may be filed anywhere in Texas); *Gay v. Gay*, No. 05–98–02020–CV, 2001 WL 477643, at *1 (Tex.App.-Dallas May 8, 2001, no pet.) (not designated for publication) (holding that judgment creditor complied with all the requirements of the Uniform Act in his filing, even though he filed judgments enforcing New York divorce decree in Texas

county other than county in which the judgment debtor resided); *Moncrief*, 1991 WL 258684, at *2 (holding that Uniform Act gives judgment creditor the right to file foreign judgment in the clerk's office of any court of competent jurisdiction in Texas and that creditor was not required to comply with section 15.002). This court should presume that the legislature meant what it said in section 35.003, and that it did not include words in the statutory text that serve no purpose. More importantly, this court should honor the legislature's prerogative to determine where foreign judgments may be filed and not supplant the legislature's policy choice by failing to give effect to the unambiguous statute. *See Lee v. City of Houston*, 807 S.W.2d 290, 293 (Tex.1991). Thus, even if it were appropriate to apply venue principles to proceedings under the Uniform Act, section 15.002 would not apply because section 35.003 would be a permissive venue statute.

The out-of-state authorities on which the majority's entire analysis rests are not

---

court, and its reasoning is not persuasive in the context of this case.

**30.** This interpretation is also at odds with this court's prior precedent. In *Mindis Metals,* this court stated that when a judgment creditor files an authenticated copy of a foreign judgment under the Uniform Act, a prima facie case for its enforcement is presented, and the burden then shifts to the judgment debtor to prove that the foreign judgment should not be given full faith and credit. *See Mindis Metals, Inc.,* 132 S.W.3d at 484. This court stated that the presumption of validity can be overcome *only* by clear and convincing evidence to the contrary. *Id.* Therefore, under *Mindis Metals,* because Grossman filed authenticated copies of the foreign judgments under the Uniform Act, the burden then shifted to Cantu to prove by clear and convincing evidence that the Florida judgments should not be given full faith and credit. *Id.* This court in *Mindis Metals* imposed no burden on

the judgment creditor to establish proper venue. In addition, a foreign judgment filed in Texas under the Uniform Act is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed. In Texas, the procedural devices by which a party may directly attack a Texas judgment must be deployed in the court that rendered the Texas judgment, which, under the Uniform Act, is the court in which the judgment creditor files the judgment in compliance with the Uniform Act. *See* Tex. Civ. Prac. & Rem.Code Ann. § 35.003; *Mindis Metals, Inc.,* 132 S.W.3d at 483 (stating that, if a judgment creditor follows the procedures of the Uniform Act for filing a foreign judgment, "[t]he judgment [becomes] enforceable as a Texas judgment on the date it was filed"); *Richards,* 81 S.W.3d at 508 (stating that proceedings directly attacking a Texas judgment must be brought in the court that rendered the judgment).

persuasive. *See Ex parte Wells,* 567 So.2d 388, 389–90 (Ala.Civ.Ct.App.1990) (failing to explain how allowing filing of foreign judgment in "any circuit court of this state" was consistent with applying the general venue statute and noting that judgment creditor failed to respond to the debtor's venue arguments in the trial court and did not file a brief on appeal); *Cherwood v. Marlin Leasing Corp.,* 268 Ga. App. 64, 601 S.E.2d 356, 357–58 (Ga.Ct. App.2004) (relying on Georgia Constitution's venue provisions, which would trump any conflicting statute, as well as very broad definition of "civil cases," the term used in that constitutional venue provision); *Garrett v. Okla. Panhandle State Univ.,* 156 P.3d 48, 50–51 (Ok.Civ.App. 2006) (failing to explain how allowing filing of foreign judgment in "any county of this state" was consistent with applying the general venue statute and basing decision on results of the interpretation rather than on the language of the statutes). The majority correctly points out that this court must construe the Uniform Act to effect its general purpose to make uniform the law of those states that enact it. Nonetheless, each state's venue provisions are different, and some, as in Georgia, are in the state's constitution and thus trump any conflicting statute. *See Cherwood,* 601 S.E.2d at 357–58. Out of 49 jurisdictions that have enacted the Uniform Act, the majority cites decisions from three as supporting its analysis and disagrees with one unpublished Texas decision [31] on this issue. The interest of uniformity does not weigh heavily in favor of the majority's analysis.

For these reasons, the court errs in applying section 15.002, in sustaining Cantu's first issue, and in reversing the trial court's judgment. The trial court correctly denied Cantu's motion to transfer venue; therefore, this court should overrule Cantu's first issue.

**31.** *Moncrief,* 1991 WL 258684, at *2.

**The trial court did not err in concluding that the judgment debtor did not establish grounds for denying the foreign judgments full faith and credit.**

In his "Motion for New Trial, Alternatively, Motion for Denial of Recognition of Foreign State Judgment," Cantu asserted that the Florida judgments are not entitled to full faith and credit and are void because the Florida court (1) allegedly lacked personal jurisdiction over him, (2) allegedly violated due process in the manner in which it struck Cantu's pleadings, and (3) allegedly never addressed whether it could exercise personal jurisdiction over Cantu. Presuming without deciding that these grounds, if proved, would be proper bases for denying full faith and credit, on this record, the trial court did not err in concluding that Cantu did not prove these grounds by clear and convincing evidence. *See Mindis Metals, Inc.,* 132 S.W.3d at 484 (stating that judgment debtor responding to foreign judgment properly filed under the Uniform Act must prove by clear and convincing evidence that judgment is not entitled to full faith and credit). Therefore, this court should overrule Cantu's second issue and affirm the trial court's rulings.

### CONCLUSION

The court does not analyze the meaning of the statutory language on which this case turns but implicitly holds that a post-lawsuit enforcement proceeding under the Uniform Act is a "lawsuit" as that term is used in the Texas venue statute. In doing so the court not only ignores the plain meaning of that statute but also thwarts the purposes of the Uniform Act in two distinct ways. First, in applying the venue statute to enforcement proceedings the court undermines principles of uniformity. Because the Texas venue statute is not

included in the counterpart statute of any other states, this court's incorporation of it into the Uniform Act places Texas in a singular minority. The surplusage the court engrafts on the Uniform Act countermines uniformity among the states. Second, because the dominant purpose of the Uniform Act is to provide a summary procedure for the expeditious enforcement of a foreign judgment after the lawsuit is over, the legislature did not intend for this post-lawsuit procedure—which has none of the indicia of a "lawsuit"—to fall within the meaning of that term as used in the venue statute. Nor did the legislature intend for a Uniform Act proceeding to be the equivalent of a common-law action to enforce a foreign judgment with venue rights for the judgment debtor. Indeed, a primary purpose in enacting the Uniform Act was to eliminate the need for judgment creditors to suffer the time and expense of filing lawsuits in Texas to enforce foreign judgments by instead providing a statutory "short-cut" procedure for that purpose. But even if a proceeding under the Uniform Act were a "lawsuit," as the court implicitly holds today, the general venue statute still should not apply because the legislature has stated unequivocally that proceedings under the Uniform Act "may be filed in the office of the clerk of any court of competent jurisdiction of this state." For these reasons, the trial court did not err in denying the motion to transfer venue and this court should affirm, not reverse, the trial court's judgment.